City of Dayton, Appellee, *v.* Cloud, Auditor, et al.; Miami Conservancy District, Appellant.

[Cite as Dayton v. Cloud (1972), 30 Ohio St. 2d 295.]

(No. 71-739—Decided June 28, 1972.)

*Mr. James W. Drake,* city attorney, *Messrs. Squire, Sanders & Dempsey* and *Mr. Alan P. Buchmann,* for appellee.

*Messrs. Brumbaugh, Corwin & McDonnell* and *Mr. Robert K. Corwin,* for appellant.

STERN, J. The issue herein is the constitutionality of R. C. Chapter 725. The pertinent facts are not in dispute.

Appellant raises four questions of law, necessitating an examination by this court of Section 2 of Article XII, and Section 2 of Article I of the Ohio Constitution. Section 2 of Article XII, to which we address ourselves first, reads, in pertinent part:

"* * * Land and improvements thereon shall be taxed by uniform rule according to value * * * and *without limiting the general power, subject to the provisions of Article I of this Constitution, to determine the subjects and methods of taxation or exemptions therefrom,* general laws may be passed to exempt burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose, but all such laws shall be subject to alteration or repeal * * * ." (Emphasis added.)

Appellant contends that R. C. 725.02, calling for a partial exemption of property from taxation where there is no physically severable exempt use, violates the "uniform" taxation requirements of Section 2 of Article XII. Appellant also contends that the language of Section 2 of Article XII operates as a limitation upon the power of the General Assembly to authorize exemption of property from taxation, in that no exemptions may be granted to property not used for the specific purposes mentioned therein. We do not agree.

Paragraph three of the syllabus in *Denison University* v. *Board of Tax Appeals, supra* (2 Ohio St. 2d 17), which we approve and follow, reads as follows:

"By reason of the amendment of Section 2 of Article XII of the Ohio Constitution effective in 1931 the General Assembly now has a power to determine exemptions from taxation that is limited only by the provisions of Article I [Bill of Rights] of the Ohio Constitution." (Citations omitted.)

No further discussion being necessary on this issue,[1] we hold that the General Assembly has plenary power to determine exemptions from taxation, limited only by the provisions of Article I of the Constitution of Ohio, and, therefore, that Section 2, Article XII of the Ohio Constitution, is not a constitutional prohibition against the issuance of urban renewal bonds in accordance with R. C. Chapter 725.

Appellant next contends that the partial exemption violates Section 2, Article I of the Ohio Constitution. This section, known as the "equal protection clause," provides substantially the same guaranty in that respect as does the Fourteenth Amendment to the United States Constitution.

By its terms, R. C. 725.02 exempts only a part of the affected real property from taxation. There is no dispute that such exempt part is determined, not by its use but by relating the prior assessed value to the total assessed value after the improvements have been made.

The law is clear that a partial exemption from taxation can be granted upon the basis of the *use* of property without violating the equal protection clause. (See *New Haven Church of Missionary Baptist* v. *Board of Tax Appeals* [1967], 9 Ohio St. 2d 53.) But appellant contends that a partial exemption based on value presents a different question. We find no constitutional prohibition against

---

[1]In arriving at the decision in *Denison University* v. *Board of Tax Appeals*, Taft, C. J., at page 27, stated:

"It is significant that the word 'all' does not now appear before the words 'land and improvements thereon.' The presence of the word 'all' before 'property' in the 1851 version of this constitutional provision was always given by this court as the reason why the General Assembly had no power to provide for any exemptions from taxation not specifically authorized by Section 2 of Article XII * * *. The removal of the specific requirement that 'all' real or personal property be taxed fortifies our conclusion that the people intended, as they stated, to return to the General Assembly as part of its legislative power 'the general power * * * to determine * * * exemptions' from taxation subject only to the limitations set forth in Article I of the Ohio Constitution, the so-called Bill of Rights. * * *"

such partial exemption based upon value, so long as it does not otherwise violate the equal protection clause.

As stated in *State, ex rel. Struble,* v. *Davis* (1937), 132 Ohio St. 555, 565: "The authorities are uniform upon the proposition that the determination of what classes of property shall be taxed and what shall be exempt is exclusively a legislative function and must be sustained by the courts unless clearly violative of some express state or federal constitutional prohibition." A presumption of validity therefore attends the interpretation of R. C. Chapter 725. *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103; *Porter* v. *City of Oberlin* (1965), 1 Ohio St. 2d 143.

Further, the Supreme Court of the United States stated in *Madden* v. *Kentucky* (1940), 309 U. S. 83, 88:

"* * * Since the members of a legislature necessarily enjoy a familiarity with local conditions which this court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and aggressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangment to negative every conceivable basis which might support it."

As stated in *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, "A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates." With this in mind, we examine the rationale behind the allowing of this partial exemption to a particular class of persons.

The General Assembly has recognized that the financing of urban renewal projects represents perhaps the chief obstacle of progress in urban renewal. The method of public financing provided in R. C. Chapter 725 is a forthright attempt to partially ease this problem by authorizing a political subdivision to exempt from taxation those improvements that private developers bring to the urban renewal area, *i. e.,* "the increase in assessed valuation * * * of real property * * * owned * * * by the municipality." (R.

C. 725.01[G]). The political subdivision then collects, by contractual agreement, the equivalent sum from the owner of the land for the sole purpose of repaying the expenses of the urban renewal project.

R. C. 725.02 specifically states:

"All improvements to real property in an urban renewal area are hereby declared to be a public purpose * * *." Although not conclusive, this legislative declaration is presumptively valid. 51 Ohio Jurisprudence 2d 61, Taxation, Section 37; *Xenia* v. *Schmidt, supra; Walker* v. *Cincinnati* (1871), 21 Ohio St. 14; *State, ex rel.,* v. *Toledo* (1891), 48 Ohio St. 112; *Board of Edn.* v. *State* (1894), 51 Ohio St. 531. The trend of cases in Ohio interpreting "public purpose," as used in Section 2, Article XII of the Ohio Constitution, is leaning to a "public benefit" interpretation of the term. See *Chase* v. *Bd. of Tax Appeals* (1967), 10 Ohio App. 2d 75; *Graf* v. *Warren* (1967), 10 Ohio St. 2d 32; *Cleveland* v. *Carney* (1961), 172 Ohio St. 189; *Carney* v. *Ohio Turnpike Comm.* (1958), 167 Ohio St. 273; *State, ex rel. Allerton Parking Corp.,* v. *City of Cleveland* (1965), 4 Ohio App. 2d 57, affirmed, 6 Ohio St. 2d 165.

The "public benefit" of privately financed urban renewal projects is readily apparent, and, although it is not necessary that an exemption serve a public benefit, such a purpose strengthens appellee's argument that the exemption involved in this case is not an arbitrary, artificial or unreasonable and oppressive classification.

Accordingly, we hold that the partial exemption authorized by R. C. Chapter 725 is neither arbitrary nor unreasonable, and violates neither Section 2, Article I of the Ohio Constitution, nor the Fourteenth Amendment to the United States Constitution.

Appellant's contention that the contractual agreement in accordance with R. C. 725.04[2] violates Section 2, Article

---

[2]R. C. 725.04 provides:

"A municipal corporation may require any purchaser from it of real estate in an urban renewal area, as a condition of such purchase,

XII of the Ohio Constitution, is likewise without merit. Essentially, appellant argues that the payment in lieu of taxes provided in R. C. 725.04 is really a tax and hence unconstitutional since it is unvoted.

We see no reason to classify the urban renewal service payment as a tax. The revenue raised will not be utilized for the direct support of the government, for administration of the law, or for the payment of public expenses. 51 American Jurisprudence 35 *et seq.*, Taxation, Section 2 *et seq.* Nor will it be excessive, or an amount more than is required to retire the bonds. Thus, as no tax is involved, there can be no violation of the voting requirement contained in Section 2, Article XII of the Ohio Constitution.

Further, we cannot agree with the Court of Common Pleas or the Court of Appeals that, absent the form for the proposed contract between the city and the intended purchasers of affected real property, an order validating the bonds could not be made. It is sufficient that we determine that the exemption to be granted will be constitutional so long as a binding agreement in accordance with R. C. 725.04 is reached.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed, insofar as it upheld the constitutionality of R. C. Chapter 725. Insofar as the Court of Appeals declined to validate the bonds on the ground that it did not have before it the form of the real estate sales contract to be used by the city, this court renders final

---

to enter into an agreement binding on the purchaser, and all subsequent purchasers, to make semiannual urban renewal service payments, in lieu of taxes upon improvements during the exemption period, equal annually in the aggregate to the amount of real property taxes that would have been paid on the improvements had an exemption period not been specified by the municipality. All semiannual urban renewal service payments shall be collected at the same time that real property taxes are collected. The entire amount of these service payments, when collected, shall be deposited in the urban renewal debt retirement fund."

judgment for the appellee. Accordingly, the city of Dayton may proceed in accordance with R. C. Chapter 725.

*Judgment accordingly.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, LEACH and BROWN, JJ., concur.