THE STATE, EX REL. SWETLAND, *v.*
KINNEY, COMMISSIONER, ET AL.

[Cite as State, ex rel. Swetland, v. Kinney (1980),
62 Ohio St. 2d   23.]

(No. 79-1402—Decided April 2, 1980.)

24

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach,* and *Mr. Herbert R. Brown,* for relator.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for respondent commissioner.

*Mr. John T. Corrigan* prosecuting attorney, *Mr. Thomas P. Gill* and *Mr. William Mitchell, Jr.,* for respondent auditor.

HOLMES, J. Section 2, Article XII of the Ohio Constitution, provides, in part, as follows:

"***Land and improvements thereon shall be taxed by uniform rule according to value, except that laws may be passed to reduce taxes by providing for a reduction in value of the homestead of permanently and totally disabled residents and residents sixty-five years of age and older, and providing for income and other qualifications to obtain such reduction. ***[Certain bonds] shall be exempt from taxation, and without limiting the general power, subject to the provisions of Article I of this constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt burying grounds, public school houses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose, but all such laws shall be subject to alteration or repeal; and the value of all property so exempted shall, from time to time, be ascertained and published as may be directed by law."

Relator argues that Section 2 of Article XII requires a tax rate that is uniform for all real property in this state, other than specifically set forth in that section and Section 36, Article II of the Ohio Constitution[3]; and that R. C. 323.152(B), which provides for a real estate tax reduction of two and one-half percent for homesteads, is unconstitutional insofar as it violates this fundamental principle. It is argued further that the constitutional requirement of uniformity imposes a mandatory legal duty upon respondents, and that mandamus lies to compel performance thereof.

In opposition, respondent commissioner contends that the General Assembly intended to grant a partial exemption from real estate taxes to homesteads, that the legislative exemption power is subject only to the equal protection provisions of Section 2 of Article I of the Ohio Constitution, and that a reasonable basis exists for distinguishing homesteads from other real property for purposes of a partial tax exemption.

[3] Section 2, Article XII, and Section 36, Article II, carve certain exceptions into the "uniform rule" requirement. Section 2, Article XII, provides for the reduction in value of the homestead of permanently and totally disabled residents, and residents 65 years of age and older. Section 36, Article II, provides that: "Notwithstanding the provisions of section 2 of Article XII, laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use."

Respondent also contends that mandamus does not lie where the relief sought is primarily injunctive, and that, in any event, it would be inappropriate for the court to determine that a legal duty exists and simultaneously mandate the performance of that duty.

In resolving the issues presented in this action, we first examine the uniformity and exemption provisions of Section 2, Article XII. This court has previously held in a number of notable cases that the constitutional requirement of uniformity mandates uniformity in the valuation of the real property and uniformity in the percentage of value which would constitute the property tax base. *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1964), 175 Ohio St. 410; *Koblenz* v. *Bd. of Revision* (1966), 5 Ohio St. 2d 214; *Goldberg* v. *Bd. of Revision* (1966), 7 Ohio St. 2d 139; *Frederick Bldg. Co.* v. *Bd. of Revision* (1968), 13 Ohio St. 2d 59; *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1968), 16 Ohio St. 2d 85; *State, ex rel. Park Invest. Co.,* v. *Bd. of Tax Appeals* (1971), 26 Ohio St. 2d 161.

Certainly no serious issue may be taken with the fact that all of these cases held steadfastly to the constitutional requirement that "land and improvements thereon shall be taxed by uniform rule according to value." We hasten to add that the majority herein take no issue with, and affirm, the basic law enunciated in those cases to the effect that the Constitution mandates that real estate be taxed by way of a uniform rule both as to mode of valuation, as well as percentage of value constituting the base of the tax. However, none of the *Park Investment* cases or their progeny discussed the issue of the constitutional authority of the General Assembly to provide for a lower tax for certain types of real estate by way of exemption or, as in this instance, partial exemption of real estate taxes.

The issue of the constitutional authority of the General Assembly to provide by law for real estate tax exemptions was considered in the case of *Denison University* v. *Bd. of Tax Appeals* (1965), 2 Ohio St. 2d 17, a case involving a real estate tax exemption for buildings connected with a public college, in which this court held, in paragraph three of the syllabus, that:

"By reason of the amendment of Section 2 of Article XII of the Ohio Constitution effective in 1931 the General Assembly now has a power to determine exemptions from taxation

that is limited only by the provisions of Article I of the Ohio Constitution.\*\*\*[Citations omitted.]"

In arriving at the decision in *Denison,* Chief Justice Taft stated, at page 27:

"It is significant that the word 'all' does not now appear before the words 'land and improvements thereon.' The presence of the word 'all' before 'property' in the 1851 version of this constitutional provision was always given by this court as the reason why the General Assembly had no power to provide for any exemptions from taxation not specifically authorized by Section 2 of Article XII.\*\*\*The removal of the specific requirement that 'all' real or personal property be taxed fortifies our conclusion that the people intended, as they stated, to return to the General Assembly as part of its legislative power 'the general power\*\*\*to determine\*\*\*exemptions' from taxation subject only to the limitations set forth in Article I of the Ohio Constitution, the so-called Bill of Rights.\*\*\*"

In cases decided subsequent to *Denison, supra,* this court reaffirmed the holding of that case. See, *e.g., Graf* v. *Warren* (1967), 10 Ohio St. 2d 32, 37; *Cleveland State Univ.* v. *Perk* (1971), 26 Ohio St. 2d 1, 5-6; *Cleveland* v. *Perk* (1972), 29 Ohio St. 2d 161, 164; *Dayton* v. *Cloud* (1972), 30 Ohio St. 2d 295.

This court, in *Dayton* v. *Cloud,* again held that the General Assembly has "plenary" power to determine exemptions from taxation, subject only to the Equal Protection Clause of the Ohio Constitution. Paragraph one of the syllabus provides:

"The General Assembly has plenary power to determine exemptions from taxation, limited only by the provisions of Article I of the Constitution of Ohio, and, therefore, Section 2, Article XII of the Ohio Constitution, is not a constitutional prohibition against the issuance of urban renewal bonds in accordance with R. C. Chapter 725."

In *Dayton* v. *Cloud, supra,* this court considered the constitutionality of R. C. Chapter 725, which chapter, dealing with urban renewal areas, provided among its features that all improvements to real property in an urban renewal area made subsequent to its designation as such an area are a public purpose and are exempt from real property taxation by all political subdivisions and taxing districts. The court then

determined that the partial exemption from taxation of the urban renewal improvements as granted to the purchasers and developers of the property was not violative of Section 2, Article I of the Ohio Constitution. Paragraph two of the syllabus set forth the following:

"The partial exemption from real property taxation of that portion of a total assessment made in accordance with R. C. Chapter 725 by relating the prior assessed value to the total assessed value after the improvements have been made is neither arbitrary nor unreasonable, and is not violative of Section 2, Article I of the Ohio Constitution."

Justice Stern, speaking for the unanimous court, at page 301, then stated:

"The 'public benefit' of privately financed urban renewal projects is readily apparent, and, although it is not necessary that an exemption serve a public benefit, such a purpose strengthens appellee's argument that the exemption involved in this case is not an arbitrary, artificial or unreasonable and oppressive classification."

Applying these principles to the instant cause, it may be reasonably concluded that the General Assembly could have granted a partial tax exemption to homesteads in the additional amount of two and one-half percent of the real estate taxes otherwise calculated and payable on property falling within that class. The issue, then, is whether the failure to more specifically characterize the tax reduction in R. C. 323.152(B) as a partial exemption, rather than a reduction, renders the statute unconstitutional.

The provisions of R. C. 323.152(B) speak of reducing taxes on homesteads by one-fourth of the amount by which the taxes "charged and payable on the homestead" are reduced for such year pursuant to the prior rollback provided by R. C. 319.301(B). We hold that these provisions seek to effect an object which is within the legislative power. We do not believe that the constitutionality of this legislation should hinge upon whether the General Assembly invoked a particular terminology in enacting it. We attach no mystical significance to the term "exemption," especially when used in a statute where the same result in a specific instance may be reached by utilizing other terminology such as "rollback" or "reduction."

In this context, any distinction is constitutionally insignificant.

We hold that R. C. 323.152(B), which rolls back or partially exempts real property taxes on "homesteads" as defined within R. C. 323.151(A), is not in violation of Section 2, Article XII of the Ohio Constitution.

The "uniform rule" requirement of Section 2, Article XII, operates to assure uniformity in valuation of real property, and uniformity in the percentage of fair market value which constitutes assessed value. *Park Invest. Co., supra* (175 Ohio St. 410). It also operates to require that in the taxation of real property the taxpayers shall be afforded equal protection of the laws under the Constitution. Such equal protection would require, first, that if there be established classifications of real estate taxpayers, any such classifications must have a rational basis. Second, the equal protection provision would dictate that any legislatively established classes be taxed at a uniform rate.

Relator asserts in his complaint in mandamus that the actions of respondents are unlawful in that R. C. 323.152(B) creates an unconstitutional classification of real estate taxpayers based upon the "current use" of the real estate contrary to prior decisions of this court. Further, relator claims that any classification of real property owners pursuant to this statute would be constitutionally impermissible by way of its discriminatory application to relator as an owner of commercial property.

This court, in *State, ex rel. Park Invest. Co., v. Bd. of Tax Appeals* (1972), 32 Ohio St. 2d 28, held that classification by way of "current use" may not be utilized for establishing the basis for valuation of real property. The court, in a *per curiam* opinion, at page 33, stated:

"Since the current use method of evaluation excludes, among other factors, location and speculative value which comprise market value, such current use method cannot be made the basis for valuation of real property for tax assessment purposes***."

However, more pertinent to our discussion here, this court, in *Dayton* v. *Cloud, supra,* speaking of the constitutionality of the classification of the *partial exemption* of improvements in urban renewal areas, stated, at page 299, that:

"The law is clear that a partial exemption from taxation can be granted upon the basis of the *use* of property without violating the equal protection clause."

The court, in *Dayton* v. *Cloud,* continued, at page 300, as follows:

"As stated in *State, ex rel. Struble,* v. *Davis* (1937), 132 Ohio St. 555, 565: 'The authorities are uniform upon the proposition that the determination of what classes of property shall be taxed and what shall be exempt is exclusively a legislative function and must be sustained by the courts unless clearly violative of some express state or federal constitutional prohibition.' A presumption of validity therefore attends the interpretation of R. C. Chapter 725. *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103; *Porter* v. *City of Oberlin* (1965), 1 Ohio St. 2d 143." The state and federal prohibition in this instance is that any such enactment must not be violative of the equal protection rights of all taxpayers. In this regard, the court must always carefully review the sections of law which constitute the legislatively enacted exemption, and such a provision must meet equal protection standards.

Relative to the constitutionality of classifications, this court, in *Xenia* v. *Schmidt* (1920), 101 Ohio St. 437, held, in paragraph five of the syllabus:

"A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates."

Another rule that must generally be applied in the determination of the constitutionality of a statute is that in the absence of a showing that a statute is unconstitutional beyond a reasonable doubt, it will be upheld. *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 376; *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142.

The court, in *Dayton* v. *Cloud, supra,* applying such rules, examined the rationale behind allowing the partial real estate tax exemption to a particular class of persons, and concluded that the classification was neither arbitrary nor unreasonable, stating, at page 300:

"The General Assembly has recognized that the financing of urban renewal projects represents perhaps the chief

obstacle of progress in urban renewal. The method of public financing provided in R. C. Chapter 725 is a forthright attempt to partially ease this problem by authorizing a political subdivision to exempt from taxation those improvements that private developers bring to the urban renewal area***."

Applying these principles of law to the facts of this case, the majority herein conclude that the relator has not shown that there is an unreasonable basis for the classification. We also recognize that there is no dispute here that the statute applies equally to all members of the class composed of owners of "homesteads."

Had the statute here provided for a total, rather than a partial, exemption of "homesteads" from real estate taxation, we may have arrived at a different conclusion in that such a law might have been determined to place an undue and unreasonable burden on owners of other types of real property, and would, in such an instance, not have passed constitutional muster. That, however, is not the case here.

Our nation and our state are experiencing disturbing, if not distressing, times in our economy. Our citizens are confronted with one of the greatest inflationary trends in recent U. S. history, authoritatively reported to have been at the level of nearly a 14 percent increase in 1979. All are hard pressed to meet private and individual needs as well as to meet those obligations mandated upon all of us by the seemingly ever-growing cost of governmental functions. Taxes, while necessary, are becoming a burdensome problem for our citizens—most particularly the home owner who has been experiencing marked cost increases in every facet of home ownership.

With this economic trend, it may reasonably be concluded that the General Assembly enacted, by way of R. C. 323.152(B), this further "rollback" of real estate taxes "charged and payable" on homesteads in order to provide some tax relief by way of a partial exemption to homeowners.

In this context, we hold that a statute which partially exempts a "homestead," as defined within R. C. 323.151(A), from real estate taxation is not violative of Section 2, Article I of the Ohio Constitution.

We conclude, therefore, that R. C. 323.152(B) is a valid exercise of the General Assembly's taxing power, and contravenes neither Section 2, Article XII, nor Section 2, Article I of the Ohio Constitution. Because relator has not proved the existence of a clear legal duty on the part of respondents, relator's motion for judgment on the pleadings is overruled, and the writ of mandamus is hereby denied.

*Writ denied.*

CELEBREZZE, C. J., SWEENEY and LOCHER, JJ., concur.

HERBERT, W. BROWN and P. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. The majority's primary argument in support of paragraph one of its syllabus[4] is essentially as follows: (1) *Denison University* v. *Bd. of Tax Appeals* (1965), 2 Ohio St. 2d 17, paragraph three of the syllabus, and its progeny authoritatively construe Section 2, Article XII of the Ohio Constitution, to permit the General Assembly to grant a partial tax exemption for "homesteads";[5] (2) the tax relieving mechanism of R. C. 323.152(B) is constitutionally equivalent to a "partial exemption";[6] (3) therefore, "R. C. 323.152(B) is a valid exercise of the General Assembly's power to tax real property***."

The majority's secondary argument in support of paragraph one of its syllabus is essentially as follows: (1) the

----

[4] Because R. C. 323.152(B) does not disadvantage a (constitutionally) "suspect" class or burden a (constitutionally) "fundamental" interest, and because R. C. 323.152(B) is not "irrational," it is not violative of either federal equal protection, or the Equal Protection Clause of the Ohio Constitution. Therefore, I agree with paragraph two of the syllabus.

[5] The majority states:

"Applying these principles [*i.e.,* of *Denison* and its progeny] to the instant cause, it may be reasonably concluded that the General Assembly could have granted a partial tax exemption to homesteads in the additional amount of two and one-half percent of the real estate taxes otherwise calculated and payable on property falling within that class."

[6] The majority states:

"We do not believe that the constitutionality of this legislation should hinge upon whether the General Assembly invoked a particular terminology in enacting it. We attach no mystical significance to the term 'exemption,' especially when used in a statute where the same result in a specific instance may be reached by utilizing other terminology such as 'rollback' or 'reduction.' In this context, any distinction is constitutionally insignificant."

*Park Investment* cases authoritatively construe other provisions of Section 2, Article XII, to require only "uniformity in valuation of real property, and uniformity in the percentage of fair market value which constitutes assessed value"; (2) R. C. 323.152(B) discriminates in favor of homesteads without contravening either of these requirements;[7] (3) therefore, R. C. 323.152(B) is consistent with the *Park Investment* cases.

### I.

Irrespective of whether R. C. 323.152(B) is consistent with the *Park Investment* cases (see part II, *infra*), if the majority chooses to support R. C. 323.152(B) based on *Denison* and its progeny, it must necessarily overrule the *Park Investment* cases. Undeniably, the *Park Investment* cases require uniformity in the percentage of value constituting the base of the real property tax. On the other hand, *Denison* and its progeny provide that the General Assembly is competent to grant partial tax exemptions limited only by Article I of the Ohio Constitution. Since a partial tax exemption is a euphemism for reducing the percentage of value constituting the base of the real property tax, *Denison* and the *Park Investment* cases are inconsistent as applied to homesteads. Because of this inconsistency, rather than emasculating them, the majority should either acknowledge the *Park Investment* cases as an exception to *Denison* or overrule them.[8] In short, if the *Park Investment* cases are still good law, they herein warrant our exclusive attention.

---

[7] The majority states:

"* * *[N]one of the *Park Investment* cases or their progeny [specifically] discussed the issue of the constitutional authority of the General Assembly to provide for a lower tax for certain types of real estate by way of exemption or, as in this instance, partial exemption, of real estate taxes."

[8] This inconsistency between *Denison* and the *Park Investment* cases as applied to real properties such as homesteads perhaps could have been considered by us in *Dayton* v. *Cloud* (1972), 30 Ohio St. 2d 295 (discussed by the majority). However, since it was not considered, *i.e.,* since the *Park Investment* cases were not therein considered, *Dayton* v. *Cloud* would be of no precedential value to the majority even if the majority were inclined to resolve this inconsistency. See paragraph one of the syllabus in *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129: "A reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a question not passed upon or raised at the time of the adjudication."

## II.

Taxation of real property by uniform rule requires three sub-rules: (1) uniformity in valuation, (2) uniformity in percentage of value constituting the base of the tax, and (3) uniformity in tax rate applied to that base. The holdings and language of the *Park Investment* cases concerned exclusively sub-rules (1) and (2) simply because the situations presented therein did not warrant broader holdings or more embracing language. Thus, their lack of specific reference to uniformity in tax rate, *i.e.,* sub-rule (3), is demonstrative of judicial self-restraint and not evidence of this court's earlier desire to fashion a Section 2, Article XII distinction between the property tax rate, *i.e.,* sub-rule (3), and the property tax base, *i.e.,* sub-rules (1) and (2). The constitutional mandate is that real property be "taxed by uniform rule according to value." Plainly, by its terms and as interpreted in the *Park Investment* cases, this mandate focuses on the bottom line and not on the above implementing sub-rules. We should rule that because this mandate as interpreted in the *Park Investment* cases is herein controlling, a constitutional amendment and not mere legislation is necessary to sustain a real property tax preference for homesteads.[9]

HERBERT and P. BROWN, JJ., concur in the foregoing dissenting opinion.

---

[9] My argument that the *Park Investment* cases are herein controlling necessarily implies that paragraph three of the syllabus in *Denison* (General Assembly's tax exempting power limited *only* by Article I of the Ohio Constitution) must be qualified for the reason that it overstates the General Assembly's tax exempting power. Such a qualification would pose little difficulty since our decisions in *Denison* and its progeny, with the exception perhaps of our decision in *Dayton* v. *Cloud,* but, see, fn. 8, *supra,* could be based upon the explicit exceptions described in Section 2 of Article XII. Even if these decisions could not be based on these exceptions, I would still qualify paragraph three of the syllabus in *Denison,* since such a qualification is required to avoid a nullification of the *Park Investment* cases.