ROOSEVELT PROPERTIES COMPANY ET AL., APPELLANTS, *v.* KINNEY, COMMR., APPELLEE.

[Cite as Roosevelt Properties Co. *v.* Kinney (1984), 12 Ohio St. 3d 7.]

(No. 83-226—Decided July 3, 1984.)

*Messrs. DuLaurence & DuLaurence* and *Mr. Henry J. DuLaurence,* for appellants Roosevelt Properties Co. et al.

*Fred Siegel Co., L.P.A., Mr. Fred Siegel, Ms. Karen H. Bauernschmidt, Messrs. Benesch, Friedlander, Coplan & Aronoff, Mr. Ed Kancler* and *Ms. Mary Beth Ballard,* for appellants Apartment & Home Owners Association et al.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. James C. Sauer,* for appellee.

*Mr. Kenneth C. Hamister, Messrs. Serazin & Deery* and *Mr. Scott F. Serazin,* urging reversal for *amici curiae,* Sherwood Company et al.

*Per Curiam.* Appellants, who own several multiunit apartment complexes, as well as various rental properties consisting of four units or less, contend that the commissioner's definition of "residential land and improvements" under Ohio Adm. Code 5705-3-06(B)(5) is artifically narrow and does not reflect the intent of the electorate who voted in favor of Section 2a, Article XII, or the General Assembly's intent under R.C. 5713.041. Specifically, appellants and the *amici curiae* argue that the common and ordinary meaning of the term "residential" is a place of human abode. Since appellants' rental units are utilized as such by their tenants, they claim the commissioner's rule, excluding their rental properties from residential reduction factors, is in direct conflict with Section 2a, Article XII and R.C. 5713.041. Appellants therefore contend the rule must fail as constituting a promulgation exceeding the scope of the commissioner's authority. Cf. *Pioneer Steamship Co.* v. *Evatt* (1940), 18 O.O. 510, 512.

In support of their contention, appellants Apartment & Home Owners Association et al. principally rely upon this court's prior decisions in *Hunt* v. *Held* (1914), 90 Ohio St. 280, *Houk* v. *Ross* (1973), 34 Ohio St. 2d 77 [63 O.O.2d 119], and *Driscoll* v. *Austintown Associates* (1975), 42 Ohio St. 2d 263 [71 O.O.2d 247].

*Hunt* v. *Held, supra,* involved the construction of a deed restriction providing "[t]his property is sold for residence purposes only." In concluding that the term "residence" did not prohibit the erection of multiunit residences on the premises, the court at page 283 stated:

"* * * The word 'residence,' as we view it, is equivalent to 'residential' and was used in contradistinction to 'business.' If a building is used as a place of abode and no business carried on[,] it would be used for residence purposes only whether occupied by one family or a number of families. * * * The word 'residence' has reference to the use or mode of occupancy to which the building may be put. * * *"

Similarly, in *Houk* v. *Ross, supra,* we held that a deed restriction which provided "that not more than one residence shall be built upon any of said tracts" and "that the said premises shall be used for residence purposes only" did not prohibit the construction of a multiple-family dwelling or residence on the premises. *Id.* at paragraph three of the syllabus. Upon

similar facts, the same result was reached in *Driscoll* v. *Austintown Associates, supra.*

Appellants also rely on several definitional sections in the Revised Code to buttress their argument that the phrase "used for residential purposes" includes multiunit dwellings consisting of four or more units regardless of the owner's occupancy. For instance, although not contained in a tax definitional section, the Landlord-Tenant Act defines "residential premises" as "* * * a dwelling unit for residential use and occupancy * * *." See R.C. 5321.01(C). This precise definition is incorporated in R.C. 1923.01(B)(4), the definitional section of Ohio's Forcible Entry and Detainer Act. Appellants further note that the Ohio Basic Building Code specifically includes apartment buildings within its "residential use group." See Ohio Adm. Code 4101-1:2-3-08.

Based upon the aforementioned authorities, appellants Apartment & Home Owners Association et al. argue that Ohio Adm. Code 5705-3-06(B)(5) does not reflect either the intent of the electorate or the General Assembly, by conditioning the term "residential" upon a specified number of rental units and the owner's occupancy of the real property. Appellants maintain that the residential classification should be predicated upon the use to which the property is put by the lessee thereof.

Conversely, the commissioner argues that neither the electorate nor the General Assembly contemplated the application of a residential reduction factor to multiunit apartments totaling four or more units, or other residential properties where the owner leases the property and does not inhabit the premises. In addressing the cases upon which appellants rely, the commissioner notes that those cases involved the character of the occupancy *and not the owner's use of the property.* Stated otherwise, the commissioner does not dispute that the proposed structures in those cases were to be erected for residential occupancy, but would argue that the owners' uses were of a commercial character.

In support of the contention that the General Assembly intended the result reflected by the subject rule, the commissioner relies, *inter alia,* upon Section 5 of Am. H.B. No. 1238, the enabling legislation for R.C. 5713.041. Section 5 provided that for the first year of calculating separate reduction factors for residential and agricultural properties prior to the promulgation of the new rule, classifications were to be based upon the predecessor to Ohio Adm. Code 5705-3-06(B)(5). That section excluded altogether from the residential classification any dwelling unit consisting of four or more units. Although this aspect of the commissioner's argument is somewhat illuminating, it is not, in and of itself, outcome determinative of the issue raised in this appeal.

The commissioner therefore points to the fact that in November 1980, the Ohio Senate rejected, by a vote of twenty-four to eight, an amendment which would have applied separate reduction factors to *all* multiunit residential properties. Appellants, however, correctly note that this court places little weight on legislative inaction as a barometer for determining legislative

intent, in view of the numerous possibilities which may contribute to the defeat of proposed legislation. See *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 115, citing *Berry* v. *Branner* (1966), 245 Ore. 307, 311, 421 P. 2d 996, 998.

Notwithstanding appellants' contentions to the contrary, this court has recognized that constitutional provisions are often cast in general terms, thus allowing the General Assembly to enact specific legislation designed to effectuate the purpose of the amendment. *State, ex rel. Swetland,* v. *Kinney,* at 572. Moreover, as recognized in *Cleveland* v. *Bd. of Tax Appeals* (1950), 153 Ohio St. 97, 103 [41 O.O. 176] (overruled on other grounds, *Denison University* v. *Bd. of Tax Appeals* [1965], 2 Ohio St. 2d 17 [31 O.O.2d 10]):

"The purpose of the amendment, and the reasons for, and the history of its adoption, are pertinent in determining the meaning of the language used, for when the language is obscure or of doubtful meaning the court may, with propriety, recur to the history of the time when it was passed, to the attending circumstances at the time of adoption, to the cause, occasion or necessity therefor, to the imperfections to be removed or the mischief sought to be avoided and the remedy intended to be afforded."

In *State, ex rel. Swetland,* v. *Kinney,* we relied, in part, upon the General Assembly's statement in the "Argument for the Proposed Amendment." In order to resolve the present cause, we again resort to that statement which provides, in pertinent part:

"The passage of Issue I will ensure fairer property tax relief for Ohio's *homeowners* and farmers. Without Issue I, business and industry in Ohio will continue to accrue unjustified tax relief at the expense of *residential* and farm *property owners.* [Emphasis added.]

"Issue I will alter Ohio's Constitution to create two classes of property: 1) residential and agricultural property, and 2) all other property (to include commercial and industrial property). Creating these classes, *most importantly,* will permit residential and agricultural tax relief to increase proportionately to inflationary increases in residential and agricultural real estate. [Emphasis *sic.*]

"* * * Because the present Ohio Constitution requires uniform application of tax laws, general property tax relief is granted across the board to all property owners, *including business land-holders.* [Emphasis added.]

"When general property tax relief is granted uniformly to all property without respect to what inflation has meant to rising residential and agricultural tax bills, the residential property taxpayer ends up, unfairly, shouldering a greater share of the property tax burdens than does business. Issue I will correct this * * *.

"Issue I will bring much needed reform in Ohio's system of property tax relief."

Having reviewed the aforementioned statement, this court is of the opinion that the General Assembly's intent was to use the terms "homeowner" and "residential property owner" interchangeably. The statement clearly

distinguishes between "homeowners" or "residential property owners," and those persons or concerns who hold land not as their home, but for "commercial" purposes or as "business land-holders."

We therefore conclude that Ohio Adm. Code 5705-3-06(B)(5) is consistent with the language and purpose of R.C. 5713.041 and Section 2a, Article XII of the Ohio Constitution. Those sections are not intended to benefit the owners of multiunit apartment complexes, or other properties designed for residential occupancy but which are not utilized as such by their owners. Such properties are accompanied by commercial expectations not otherwise associated with properties occupied by "homeowners." Appellants' argument focuses exclusively on the tenant's use of real property and not the owner's use, which, under the facts *sub judice,* is singularly commercial in nature. Moreover, in *State, ex rel. Swetland, supra,* this court unanimously acknowledged that the purpose of Section 2a, Article XII was to overturn an existing tax reduction system whereby the owners of residential and agricultural real property, whose property inflated at rapid rates, were shouldering a greater tax burden than the owners of commercial and industrial real property, whose property values inflated at lesser rates.

Appellants further contend that Ohio Adm. Code 5705-3-06(B)(5) contravenes the uniform taxation requirement of Section 2, Article XII of the Ohio Constitution, as well as the Equal Protection Clause of the United States Constitution.

In *State, ex rel. Swetland,* v. *Kinney* (1980), 62 Ohio St. 2d 23 [16 O.O.3d 14], a similar challenge was leveled at R.C. 323.152(B) which reduced or partially exempted "homesteads," as defined within R.C. 323.151(A), from real estate taxes. In upholding the constitutionality of the enactment, which granted tax reductions for owner-occupied dwellings while not extending the reductions to nonowner-occupied dwellings, we stated at 29:

"The 'uniform rule' requirement of Section 2, Article XII, operates to assure uniformity in the valuation of real property, and uniformity in the percentage of fair market value which constitutes assessed value. *Park Invest. Co., supra,* [1964] (175 Ohio St. 410 [25 O.O.2d 432]). It also operates to require that in taxation of real property the taxpayers shall be afforded equal protection of the laws under the Constitution. Such equal protection would require, first, that if there be established classifications of real estate taxpayers, any such classifications must have a rational basis. Second, the equal protection provision would dictate that any legislatively established classes be taxed at a uniform rate."

Appellants' argument pertaining to Section 2, Article XII is predicated upon the assertion that all "residential" property is not being taxed uniformly. The resolution of this argument is necessarily contingent upon whether this court agrees that appellants' properties are used for "residential" purposes, as that term is utilized within Section 2a, Article XII and R.C. 5713.041. Having previously determined that appellants' properties are

utilized in a business or commercial capacity, we are unable to conclude that a violation of Section 2, Article XII exists.

Turning next to the constitutionality of the classification contained under Ohio Adm. Code 5705-3-06(B)(5), this court held in *Xenia v. Schmidt* (1920), 101 Ohio St. 437, paragraph five of the syllabus:

"A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates."

As stated in *State, ex rel. Struble, v. Davis* (1937), 132 Ohio St. 555, 565 [8 O.O. 552]:

"The authorities are uniform upon the proposition that the determination of what classes of property shall be taxed and what shall be exempt is exclusively a legislative function and must be sustained by the courts unless clearly violative of some express state or federal constitutional provision."

Yet another rule which emerges when determining the constitutionality of an enactment is that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." *State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142, 147 [57 O.O. 134]. Accord *Bd. of Edn. v. Walter* (1979), 58 Ohio St. 2d 368, 376 [12 O.O.3d 327]. This principle applies equally to administrative regulations. *Pacific States Box & Basket Co. v. White* (1935), 296 U.S. 176. Cf. *State, ex rel. Shafer, v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590 [50 O.O. 465], wherein it was recognized that administrative regulations are presumed reasonable, both factually and legally, and the burden rests on the party challenging the rule to introduce evidence to the contrary.

Finally, the Equal Protection Clause "* * * imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." *Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 526. "That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy." *Id.* at 528.

The application of the foregoing principles of law to the present cause leads this court to conclude that appellants have failed to demonstrate that an unreasonable basis exists for the classification contained within Ohio Adm. Code 5705-3-06(B)(5). The requirement of owner occupancy is certainly rationally related to a tax reduction factor targeted for homeowners, as opposed to commerical or business concerns, in light of recent inflationary trends. Cf. *State, ex rel. Swetland, v. Kinney* (1980), *supra.* To hold otherwise would enable owners of multiple residential properties to use their properties primarily in an income generating capacity and therefore receive the advantages of a tax reduction factor from which they are not intended to benefit.

Similarly, we perceive no fatal constitutional defect in the classification

which applies the reduction factor to homeowners whose property also includes up to three additional dwelling units. We reject appellants' contentions that owner-occupied dwellings of four units or less are indistinguishable from large multiunit apartment complexes. As recently recognized by the Supreme Court of Minnesota in *Hegenes* v. *State* (1983), 328 N.W. 2d 719, 722:

"* * * The fact that apartment units may all be put to the same use does not necessarily mean that they are all similarly situated for tax purposes. As the Tax Court points out, with respect to consumption of governmental services such as fire and police protection and in regard to the possible impact from the repeal of the limited-value tax statute, the small and large properties are not similarly situated. Or, to put it another way, the distinctions between the two classes are genuine, not fanciful * * *.

"* * * [T]here are manifest differences between a duplex and a large multiunit complex, and the fact that these differences diminish when comparing triplexes to four-unit properties goes to where the line should be drawn. For constitutional purposes, the line drawn need not be perfect. As Justice Holmes observed:

" 'When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark.' *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32, 41 * * * (1928) (Holmes, J., dissenting).

"While this is a close case, we conclude that the line drawn by the legislature between apartment buildings of four or more and three or less units is not 'wide of any reasonable mark' and is based on distinctions which are genuine and have a rational basis."

Similarly, in the instant cause a rational basis exists for the classification extending a tax reduction factor to owner-occupied dwellings based upon a maximum number of dwelling units located on the property. The policy of Section 2a, Article XII, and R.C. 5713.041 is clear; that is, the state intended to provide tax relief to small property homeowners, as well as agricultural landowners, whose property values were appreciating more rapidly than other properties primarily utilized in business or commercial settings. By necessary implication, a legal distinction had to be drawn between these various classes of property.

Appellants are mistaken in their assertion that an owner-occupied duplex and a large multiple unit apartment complex are indistinguishable and, therefore, similarly situated for tax purposes. Clearly, the owner-occupied

duplex retains characteristics of homeownership not otherwise attributable to a large multiunit apartment complex. We agree with the court in *Hegenes, supra,* that "the fact that these differences diminish when comparing triplexes to four-unit properties" or, as in this case when comparing four-unit properties to five-unit properties, becomes a question of line drawing. We conclude, however, that since the Equal Protection Clause does not impose an "iron rule of equality," the line drawn in the subject cause is reasonable. Although the classification places a greater tax burden on those who are using their residential property primarily for income producing purposes, this is rational. The classification will withstand equal protection arguments on the basis of the state's interest in reducing the tax burden on specified property owners to further economic policies.

For the foregoing reasons, the decision of the Board of Tax Appeals is hereby affirmed.

*Decision affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.