CHU BROTHERS TULSA PARTNERSHIP, P.L.L., Appellee,

v.

The SHERWIN–WILLIAMS COMPANY, Appellant.

[Cite as *Chu Bros. Tulsa Partnership, P.L.L. v. Sherwin–Williams Co.*, 187 Ohio App.3d 261, 2010-Ohio-858.]

Court of Appeals of Ohio,
Twelfth District, Madison County.

No. CA2009–09–020.

Decided March 8, 2010.

---

22. *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, syllabus.

Austin P. Wildman, for appellee.

Tucker Ellis & West, L.L.P., and Clifford S. Mendelsohn, for appellant.

RINGLAND, Judge.

{¶ 1} Defendant-appellant, the Sherwin–Williams Company, appeals a decision granting summary judgment in favor of plaintiff-appellee, Chu Brothers Tulsa Partnership, P.L.L.

{¶ 2} On January 28, 2005, Sherwin–Williams entered into a commercial lease with Thomson Mohler, the owner of a parcel of land at 425 Lafayette Street,

London, Ohio, to operate a retail store at the location. Chu Brothers purchased the real estate from Thomson Mohler, subject to the lease, on August 8, 2006.

{¶ 3} In 2003, the city of London passed Ordinance 193–02 implementing a tax-increment-financing ("TIF") agreement for a 195–acre area designated for private development. The property at issue in this case is included in the TIF district. To encourage development, the ordinance declared that any increase in the assessed value of property within the TIF district would be exempt from taxation. Rather than pay real estate taxes on the increased value of the property following improvements, owners of property in the TIF district make service payments in lieu of taxes ("PILOTs"). PILOTs are essentially the same amount as the real estate taxes a property owner pays for the increase in value of the property, but unlike general real estate taxes that are paid into the general fund, PILOTs are directed into a public-improvement tax-increment-equivalent fund. The PILOT funds are used only to pay for infrastructure improvements for the TIF district.

{¶ 4} For the 2006 and 2007 tax year, PILOTs for the property at issue amounted to $1,998.32 and $15,864.92, respectively. Chu Brothers sent Sherwin–Williams a bill for the amount, but Sherwin–Williams refused to pay, claiming that it was not required to pay special assessments under the contract. Chu Brothers filed a breach-of-contract action against Sherwin–Williams, seeking reimbursement for the PILOTs.

{¶ 5} Both parties filed opposing motions for summary judgment. The trial court entered judgment in favor of Chu Brothers, concluding that the PILOTs were not statutory special assessments and, as a result, under the terms of the lease, Sherwin–Williams was obligated to pay. Sherwin–Williams timely appeals, raising one assignment of error:

{¶ 6} "The trial court erred in (1) granting plaintiff-appellee Chu Brothers Tulsa Partnership PLL's motion for summary judgment and (2) denying defendant-appellant the Sherwin Williams company's cross-motion for summary judgment, because the PILOTs assessed against the property under the governing TIF agreement share all of the same characteristics as special assessments (for which Chu Brothers is responsible under the parties' lease), as defined by the Ohio Supreme Court."

{¶ 7} On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can come only to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. See Civ.R. 56(C); see also *Harless v. Willis Day Warehousing Co.* (1978), 54

Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.

{¶ 8} Sherwin–Williams requests this court to reverse the decision of the trial court, deny Chu Brothers' motion for summary judgment, and grant its cross-motion.

{¶ 9} Both parties agree that the terms of the lease in this case govern their real estate tax and assessment obligations. Specifically, the lease in this case provides that Sherwin–Williams is responsible for all "general real estate taxes and assessments," while Chu Brothers must pay "special assessments." In its sole assignment of error, Sherwin–Williams asserts that PILOTs are special assessments. In contrast, Chu Brothers argues that PILOTs are not special assessments and the contract requires Sherwin–Williams to pay for the charges. Accordingly, our sole question for review is to determine whether PILOTs are special assessments.

{¶ 10} The trial court found that "special assessments are creatures of statute," which are created only under R.C. 727.01 et seq. Since this specific statutory procedure exists for municipalities to levy special assessments, the court ultimately concluded that PILOTs, which are created under a different section of the code, are not special assessments. Without making a definitive finding, the trial court implied that PILOTs are a form of taxes. The court reasoned that PILOTs represent the increased portion of taxes that result from improvements made to the property but are redirected to pay for infrastructure improvements. The court concluded that the term "special assessment" as used in the lease only referred to statutory special assessments under R.C. 727.01 and, since PILOTs are not R.C. 727.01 special assessments, that Sherwin–Williams was responsible for the PILOTs. Further, the court claimed that PILOTs are not special assessments because they are used to pay for "public infrastructure improvements," which Sherwin–Williams was also not exempt from paying under the lease agreement.

{¶ 11} After review of the relevant statutory and case law, we disagree with the trial court's assumptions. We first acknowledge that although PILOTs are levied and valued similar to real estate taxes or may be viewed simply as redirected taxes, the Ohio Supreme Court has held that PILOTs are not taxes. *Dayton v. Cloud* (1972), 30 Ohio St.2d 295, 302, 59 O.O.2d 370, 285 N.E.2d 42.[1]

---

1. In *Cloud,* the Ohio Supreme Court faced a constitutional challenge to the payment of PILOTs pursuant to an urban-renewal plan. Although not directly dealing with TIF legisla-

■ {¶ 12} The question remains though whether PILOTs are special assessments. Special assessments are charges imposed by a public authority on property in the immediate vicinity of a public improvement, to pay the cost of the construction, and made with reference to the special benefit that the property derives from the improvement. *Laskey v. Hilty* (1951), 91 Ohio App. 136, 145, 48 O.O. 272, 107 N.E.2d 899.

{¶ 13} Historically, the Ohio Supreme Court has provided guidance to delineate between special assessments and taxes and to determine whether a charge against real property is a special assessment. The court's first explanation of assessments appeared in *Hill v. Higdon* (1855), 5 Ohio St. 243. "The popular as well as legal signification of this term, had always indicated those special and local impositions upon property in the *immediate vicinity* of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefit which such property derived from the expenditure of the money." (Emphasis sic.) Id. at 247.

{¶ 14} In *Lima v. Lima Cemetery Assn.* (1884), 42 Ohio St. 128, the court further explained, "In a general sense, a tax is an assessment, and an assessment is a tax; but there is a well-recognized distinction between them, an assessment being confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity, and levied with reference to special benefits to the property assessed." Id. at paragraph one of the syllabus. See also *State ex rel. Leipsic v. Moenter* (1918), 99 Ohio St. 110, 124 N.E. 70, syllabus.

{¶ 15} In *State v. Carney* (1956), 166 Ohio St. 81, 1 O.O.2d 210, 139 N.E.2d 339, the Ohio Supreme Court provided further clarification between special assessments and real property taxes. "A special assessment is not a tax as such. It is an assessment against real property based on the proposition that, due to a public improvement of some nature, such real property has received a benefit. Such an assessment is levied only against the property benefited by the improvement. Real property taxes on the other hand have no relation to benefit but are levied at a uniform rate on all the real property in a tax district for the purpose of raising revenue for governmental operation." Id. at 83.

---

tion, the issue in *Cloud* was similar to the issues raised in a Missouri Supreme Court case cited by Sherwin–Williams, *Tax Increment Financing Comm. of Kansas City v. J.E. Dunn Constr. Co.* (Mo.1989), 781 S.W.2d 70. In each case, the supreme court found that the PILOT scheme was constitutional. *Cloud* at 302, 285 N.E.2d 42; *J.E. Dunn* at 75. In *J.E. Dunn*, the Missouri Supreme Court also explicitly concluded that PILOTs are special assessments. Id. at 73. Sherwin–Williams submits *J.E. Dunn* in the instant matter as persuasive authority that PILOTs are special assessments. Although we reach the same conclusion as the Missouri Supreme Court, our decision in this case is based upon Ohio case law.

{¶ 16} The common factors in each definition provided by the Supreme Court for determining whether a payment is a special assessment are (1) the use of the funds and (2) that the levied property receive a direct or special benefit from the improvements. In describing special assessments, the court does not refer to the statutory procedure followed by the governmental entity to create an assessment or the method of valuation. Instead, the court emphasizes that special assessments are levied only against designated parcels of property that receive direct benefits from the improvements paid for by the assessment. "A tax is a burden levied on *citizens* for the general operation of the government. By contrast, an assessment is a narrower burden levied on specific *property owners* to cover the cost of benefits bestowed on the property by public improvements." (Emphasis sic.) *State ex rel. Emrick v. Wasson* (1990), 62 Ohio App.3d 498, 506, 576 N.E.2d 814.

{¶ 17} Ohio's TIF legislation clearly demonstrates that PILOTs are special assessments. R.C. 5709.40(B) provides, "An ordinance adopted or amended under this division shall designate the specific public infrastructure improvements made, to be made, or in the process of being made by the municipal corporation that directly benefit, or that once made will directly benefit, the parcels for which improvements are declared to be a public purpose." See also R.C. 5709.40(C)(3)(a). The Ohio Supreme Court recently recognized this characteristic, noting that public improvements constructed pursuant to a municipal TIF program "benefit specified parcels of property." *Princeton City School Dist. Bd. of Edn. v. Zaino* (2002), 94 Ohio St.3d 66, 70, 760 N.E.2d 375.

{¶ 18} Like assessments levied under R.C. 727.01 et seq., PILOTs collected pursuant to a TIF agreement are another form of statutory special assessment. Although equal to the real property taxes that would have been payable if the property had not received a TIF exemption, PILOT funds are used to pay for the infrastructure improvements that directly benefit the property owner. See Finley, Don't Let Your 'TIF' Cause a 'Tiff', 15 Ohio Municipal Service (2003) 58. Further, although PILOTs are collected to fund public infrastructure improvements, the improvements are built for the direct benefit of the property levied on and, most likely, would not be built without the creation of a TIF. Id.

{¶ 19} Pursuant to the explicit terms of the city's TIF ordinance, the PILOT funds in this case are used "[t]o pay the cost of constructing the Infrastructure Improvements" for the properties within the Keny Boulevard TIF district. The ordinance further provides that the "public infrastructure improvements * * * directly benefit the Property with all of the incremental demand placed upon the Infrastructure Improvements being directly attributable to the private improvements to be constructed on the Property."

{¶ 20} In this case, the PILOTs were designated to construct a sanitary sewer line from the wastewater-treatment plant to the TIF district, extension of Keny Boulevard from U.S. Route 42 to State Route 38, and improvements to U.S. Route 42 for better access to the district. Neither party disputes that these improvements were created for the use and development of the properties within the TIF district and that the properties received direct benefits from the improvements.

{¶ 21} Chu Brothers insists that *Carney* is inapplicable for determining whether PILOTs are special assessments. Chu Brothers argues that *Carney* is inapplicable, since it predates Ohio's TIF legislation, but the Ohio Supreme Court continues to follow the *Carney* definition, most recently in *Cleveland Clinic Found. v. Wilkins,* 103 Ohio St.3d 382, 2004-Ohio-5468, 816 N.E.2d 224. *Carney* and other previous Supreme Court cases defining special assessments provide strong guidance for determining whether a charge against a property owner is a special assessment. Further, merely because Ohio's TIF legislation was enacted after *Carney* does not mean that the legislature can not later create a new assessment procedure that meets the criteria of a special assessment. Ohio's TIF legislation and the PILOTs collected pursuant to a TIF ordinance clearly satisfy the definition of a special assessment, since the funds are used to construct improvements for the properties directly benefited by those improvements.

{¶ 22} Similarly, Chu Brothers submits an argument similar to the findings of the trial court, namely that special assessments arise only under R.C. 727.01 et seq. Yet, as explained above, special assessments are not limited to enactment under R.C. 727.01 et seq. Additionally, provisions for statutory special assessments also exist under R.C. 6119.52 (water and sewer improvements) and 5540.031 (transportation improvements). The Ohio Supreme Court has also recognized the creation of special assessments based upon a petition, contract, or agreement between a public authority and landowners. *Columbus v. Sohl* (1886), 44 Ohio St. 479, 8 N.E. 299. See also 84 Ohio Jurisprudence (2005) 23, Special Assessments, Section 3; and *Cloud,* 30 Ohio St.2d at 296, 59 O.O.2d 370, 285 N.E.2d 42 (real property purchaser in urban-renewal district must enter into agreement to make semiannual PILOTs).

{¶ 23} Finally, Chu Brothers asserts that the lease in this case obligates Sherwin–Williams to pay general real estate taxes and assessments and, since PILOTs are the same amount as general property taxes and are simply diverted tax funds, that the parties intended that Sherwin–Williams would pay PILOTs. Chu Brothers claims that this is a question for the trier of fact, but it offers no evidence in support of this position or that the term "special assessments" in the lease differs from its legal definition.

{¶ 24} Based on the foregoing, Sherwin–Williams's assignment of error is sustained.

{¶ 25} The judgment of the trial court is hereby reversed, Chu Brothers' motion for summary judgment is denied, and summary judgment is entered in favor of Sherwin–Williams.

YOUNG, P.J., and POWELL, J., concur.

Judgment reversed.