[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 66.]

PRINCETON CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.* ZAINO, TAX COMMR., ET AL., APPELLEES.

[Cite as *Princeton City School Dist. Bd. of Edn. v. Zaino*, 2002-Ohio-65.]

*Taxation—Real property—Public improvements—Board of Tax Appeals' decisions finding that Union Township correctly followed the Revised Code in establishing tax increment financing for improvements for several roads in the township affirmed.*

(Nos. 00-1502, 00-1503, 00-1504, 00-1505, 00-1506 and 00-1507—Submitted October 3, 2001—Decided January 16, 2002.)

APPEALS from the Board of Tax Appeals, Nos. 97-K-825, 97-K-826, 97-K-827, 97-K-828, 97-K-829 and 97-K-830.

————————————

ALICE ROBIE RESNICK, J.

{¶ 1} On April 23, 1990, the Union Township Board of Trustees resolved to declare improvements for several of the roads in the township to be public improvements that qualified for tax increment financing ("TIF") because the improvements would alleviate traffic problems for area businesses and would spur new development. The board of trustees declared the improvements "to be a public purpose for a period of thirty (30) years (subject to earlier termination upon the retirement of tax increment debt), commencing on the date of this Resolution." The board of trustees identified the parcels of land that would benefit from the improvements and exempted from real property taxation further improvements occurring on the parcels after the date of the resolution. Finally, the board of trustees expressed its intention to construct public improvements to the roads and pay for the improvements "with service payments in lieu of taxes to be made by the owners of the parcels of land described in [an attached list of six properties]." On

July 9, 1991, the board of trustees extended the boundaries of the TIF district to include additional property owned by Duke Associate World Park.

{¶ 2} Since passing the resolutions, the township has improved the road system within the area encompassed by the TIF, including improving access to Interstate 75, and additional road improvements are planned. Some of the owners of the parcels identified in the resolutions, taking advantage of the improved road system, have further developed their parcels.

{¶ 3} In 1996, township officials urged the owners of the parcels in the TIF area to apply to appellee Tax Commissioner to exempt their parcels from the real property tax for 1996. In 1997, the applicants clarified that they also sought remission of taxes on the parcels for 1993, 1994, and 1995. The Board of Education, Princeton City School District ("Princeton"), appellant, notified the commissioner of its intention to participate in the hearings on the applications. The commissioner found that the township had complied with the statutes authorizing TIFs and on June 24, 1997, exempted the properties beginning in tax year 1996 and ending either in the earlier of tax year 2020 (except for one parcel ending in 2021) or on the date on which the township fully pays for the improvements from the township public improvement fund. The commissioner further remitted taxes, penalties, and interest for tax years 1993, 1994, and 1995.

{¶ 4} Princeton appealed the commissioner's orders to the Board of Tax Appeals ("BTA"). The BTA, rejecting Princeton's arguments and concluding that Union Township had correctly followed the Revised Code in establishing the TIF program, affirmed the commissioner's orders on July 21, 2000.

{¶ 5} This cause is now before this court upon an appeal as of right.

**Overview of Tax Increment Financing Plans**

{¶ 6} Meck & Pearlman, Ohio Planning and Zoning Law (2000) 704, Section T 15.29, explains TIFs:

2

"Tax increment financing (TIF) is a method for funding public improvements in an area slated for redevelopment by recapturing, for a time, all or a portion of the increased property tax revenue that may result if the redevelopment stimulates private reinvestment. For example, a local government may redevelop the area surrounding a public square, installing public improvements like fountains, benches, statutory [*sic*] or a parking garage and financing their installation with the recaptured tax increment."

{¶ 7} 3 Princehorn & Shimp, Ohio Township Law (2000) 42, Section T 2.6, describes how townships employ TIFs to fund public improvements:

"Townships are authorized to declare improvements to real property to be exempt from property taxation and to require the owner of such property to make service payments in lieu of the real property taxes that would have been payable with respect to the improvements had the property not been exempted by the township. A township receiving such payments in lieu of taxes is required to establish a public improvement tax increment equivalent fund and to deposit such payments into that fund. The township must use moneys deposited into the public improvement tax increment equivalent fund to pay the costs of public improvements, or to pay the principal of and interest on bonds or notes issued to pay the costs of such public improvements, that are necessary for the development of the real property for which the exemption is granted."

{¶ 8} R.C. 5709.73, initially enacted in Sub.H.B. No. 390, 142 Ohio Laws, Part II, 3539, 3541-3542 (effective October 20, 1987), empowers a township to designate parcels for a public improvement area, to exempt further improvements to these parcels from the real estate tax, and to construct public improvements in the designated area.[1] At the time of the board of trustees' 1990 resolution, it read:

---

1. We note that the General Assembly has amended these statutes to grant school districts greater ability to participate in the establishment of TIF projects. Since July 1994, school districts must approve any exemptions that extend beyond ten years. Am.Sub.S.B. No. 19, 145 Ohio Laws, Part I, 101, 182. School districts must approve that percentage of the improvements to be exempted over

"A board of township trustees may, by unanimous vote, adopt a resolution that declares to be a public purpose for any number of years not to exceed thirty any public improvements made that are necessary for the development of certain parcels of land located in the unincorporated area of the township. Such resolution may exempt from real property taxation further improvements to a parcel of land which benefited from such public improvements. The exemption commences on the effective date of the resolution and ends on the date specified in the resolution as the date the improvement ceases to be a public purpose, or ends on the date on which such improvements are paid in full from the township public improvement tax increment equivalent fund established under section 5709.75 of the Revised Code, whichever occurs first. The board of township trustees may, by majority vote, adopt a resolution which permits the township to enter into such agreements as the board finds necessary or appropriate to provide for the construction of public improvements. Any exemption shall be claimed and allowed in the same or a similar manner as in the case of other real property exemptions. * * *

"* * *

"As used in this section and section 5709.74 of the Revised Code, 'further improvement' means the increase in the true value of the parcel of property in the unincorporated territory of the township after the effective date of the resolution." *Id.*, 142 Ohio Laws, Part II, 3539, 3541-3542.

{¶ 9} R.C. 5709.74, also initially enacted in Sub.H.B. No. 390, authorizes a township to require the parcel owner to pay into an improvement fund instead of paying taxes:

---

seventy-five percent. *Id*. at 182-183. They and the board of township trustees may also "negotiate an agreement providing for compensation to the school district equal in value to a percentage of the amount of taxes exempted in the eleventh and subsequent years of the exemption period or, in the case of exemption percentages in excess of seventy-five percent, compensation equal in value to a percentage of the taxes that would be payable on the portion of the improvements in excess of seventy-five percent were that portion to be subject to taxation." R.C. 5709.73(B)(2); *id*. at 183. The current statutes, moreover, do not exempt residential property. R.C. 5709.73(A); *id*. at 182.

"A township that has declared an improvement to be a public purpose under section 5709.73 of the Revised Code may require the owner of the parcel to make annual service payments in lieu of taxes to the county treasurer on or before the final dates for payment of real property taxes. Each payment shall be charged and collected in the same manner and in the same amount as the real property taxes that would have been charged and payable against any improvement made on the parcel if it were not exempt from taxation. * * * A township shall not require an owner to make annual service payments in lieu of taxes pursuant to this section after the date on which the township has been paid back in full for the public improvements made pursuant to sections 5709.73 to 5709.75 of the Revised Code.

"Moneys collected as service payments in lieu of taxes shall be distributed at the same time and in the same manner as real property tax payments except that the entire amount so collected shall be distributed to the township in which the improvement is located. * * * The treasurer shall maintain a record of the service payments in lieu of taxes made from property in each township.

"Nothing in this section or section 5709.73 of the Revised Code affects the taxes levied against that portion of the value of any parcel of property that is not exempt from taxation."

{¶ 10} Finally, R.C. 5709.75 directs a township to deposit service payments into a "township public improvement tax increment equivalent fund" and pay for the public improvements from the fund:

"Any township that receives service payments in lieu of taxes under section 5709.74 of the Revised Code shall establish a township public improvement tax increment equivalent fund, by resolution of the board of township trustees, into which shall be deposited such payments distributed to the township by the county treasurer as provided in that section. Moneys deposited in that fund shall be used by the township to pay the costs of public improvements made pursuant to section 5709.73 of the Revised Code, including any interest on and principal of the notes.

Any incidental surplus remaining in the township public improvement tax increment equivalent fund upon its dissolution shall be transferred to the general fund of the township."

{¶ 11} Thus, the General Assembly has authorized townships, through TIF programs, to construct public improvements that will benefit specified parcels of property. The General Assembly has empowered townships to redirect tax receipts attributable to the increase in true value of the benefited parcels to a fund out of which the township pays for the improvements.

**Specifying Benefited Parcels**

{¶ 12} In Proposition of Law No. I, Princeton initially argues that Union Township did not follow R.C. 5709.73 because Union Township did not specify certain parcels for the TIF but, instead, created a TIF district. Princeton also argues, somewhat inconsistently, that Union Township should have named all the parcels in the school district to redirect taxes to pay for the improvements instead of selecting certain parcels in the school district. Appellees counter that Union Township correctly followed the statute.

{¶ 13} R.C. 5709.73 authorizes township trustees to establish a TIF program. The statute allows the trustees to adopt a resolution to declare as a public purpose any public improvements made that are necessary for the development of certain parcels of land located in the unincorporated area of the township.

{¶ 14} Union Township adopted Resolution No. 13-90, which established the TIF program, on April 23, 1990. This resolution declares the road improvements to be public improvements necessary for the further development of parcels listed in Exhibit A attached to the resolution. These parcels appear on the map as a bounded area. On July 9, 1991, Union Township adopted Resolution No. 91-17 to amend Resolution No. 13-90. This resolution declared the public improvements described in Resolution No. 13-90 to be necessary also for the

6

further development of the parcels listed in an exhibit attached to Resolution No. 91-17.

{¶ 15} Union Township complied with R.C. 5709.73. Contrary to Princeton's argument, this statute does not prohibit a township from compiling a list of "certain parcels" that comprise a district. Moreover, this statute does not require a township to include all parcels of a school district in a TIF district so created.

### Review of Resolution Naming Benefited Parcels

{¶ 16} In Proposition of Law No. II, Princeton maintains that a direct causal connection must exist between the construction of the public improvements and the parcels to be benefited by those improvements, contending that the public improvements were not necessary to the development of certain parcels. In a related argument in Proposition of Law No. VIII, Princeton contends that the commissioner could exempt or remit taxes only after the exempt use began on January 1, 1996, which was apparently the date that Union Township began constructing the public improvements.

{¶ 17} Former R.C. 5709.73 did not provide for any review of the township trustees' decision to determine whether the public improvements will benefit the parcels. 142 Ohio Laws, Part II, 3539, 3541-3542. Accordingly, under the statute, Union Township made the determination that the public improvements would benefit the named parcels, and Princeton has no statutorily based protest.

{¶ 18} Moreover, under former R.C. 5709.73, now R.C. 5709.73(C), "the exemption commences on the effective date of the resolution," and the township adopted the resolutions effective April 23, 1990 and July 9, 1991. Thus, the commissioner could exempt the qualified properties after these dates.

### Amounts Exempted

{¶ 19} In Propositions of Law Nos. III, IV, and V, Princeton claims that Union Township should receive the tax attributable to the increase in true value

since the tax lien date preceding the filing of the exemption application only, which in this case is January 1, 1996. Princeton also argues that Union Township should receive only the tax attributable to the development or improvements since the application for the exemption. Under these propositions, Princeton argues that Union Township should not receive tax amounts attributable to increases in true value in years prior to 1996 under the remission provisions.

{¶ 20} As Duke Realty Ltd. Partnership ("Duke") asserts in its brief, Princeton "confuses the time for filing an exemption *application* with the time for *measuring the value* of that exemption." (Emphasis *sic*.) R.C. 5715.27(F) requires an applicant for exemption to file the application by December 30 of the tax year for which the applicant seeks exemption. However, R.C. 5709.73 allows the township trustees to exempt "further improvements" from the real estate tax. Sub.H.B. No. 390, 142 Ohio Laws, Part II, 3539, 3541. Additional provisions, now R.C. 5709.73(A)(2), define "further improvements" to mean "the increase in the true value of the parcel of property in the unincorporated territory of the township *after the effective date of the resolution * * *.*" (Emphasis added.) Thus, a property owner may obtain an exemption for property in a TIF beginning in the year in which the owner files the exemption application. The amount of the exemption the owner receives, however, equals the increase in true value of the parcel after the effective date of the resolution establishing the TIF. In other words, the "further improvements" are not the development of the parcels after the effective date of the resolution; they are the increase in the true value of the parcels after the effective date of the resolution.

{¶ 21} Furthermore, as to remitting taxes for 1993, 1994, and 1995, R.C. 5709.73, now R.C. 5709.73(C), allows exemptions to "be claimed and allowed in the same or a similar manner as in the case of other real property exemptions." R.C. 5713.08(B) authorizes the commissioner to remit taxes subject to the requirements of R.C. 5713.081. R.C. 5713.081 permits the commissioner to remit three years of

8

delinquent taxes, penalties, and interest. Accordingly, the commissioner properly remitted taxes for 1993, 1994, and 1995.

### Claimed Technical Deficiencies

{¶ 22} In Propositions of Law Nos. VI and VII, Princeton argues that the exemption applications were technically deficient. First, in Proposition of Law No. VI, Princeton maintains that the Tax Commissioner should have dismissed the applications because an individual named Laura Farmer signed the "Treasurer's Certificate" portion of the exemption application on behalf of Mary C. Law, the Butler County Treasurer. Princeton maintains that the BTA should have required appellees to establish exactly who Laura Farmer is rather than requiring Princeton to do so. Princeton suggests that Laura Farmer had no authority to sign the certificate.

{¶ 23} "The commissioner shall not consider an application for exemption * * * unless the application has attached thereto a certificate executed by the county treasurer * * *." R.C. 5713.08(A). Furthermore, R.C. 321.04 authorizes the treasurer to appoint deputies, and a "deputy, when duly qualified, may perform any duties of his principal." R.C. 3.06. Thus, the county treasurer must sign the required certificate but may appoint a deputy, who, after being duly qualified, may sign in the treasurer's stead.

{¶ 24} "The action of an administrative officer or board within the limits of the jurisdiction conferred by law is presumed, *in the absence of proof to the contrary*, to be valid and to have been done in good faith and in the exercise of sound judgment." (Emphasis added.) *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E.2d 132, paragraph seven of the syllabus; see, also, *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 25, 523 N.E.2d 826, 834. Thus, the Tax Commissioner correctly required Princeton to prove that the treasurer's certificate was deficient. Since Princeton did not prove

this deficiency, the Tax Commissioner properly presumed that the certificate was properly executed.

{¶ 25} In Proposition of Law No. VII, Princeton claims that several of the applications fail to answer questions regarding the date of acquisition of ownership of the property, purchase price, and any lease agreements on the property. Princeton cites *Stanjim Co. v. Mahoning Cty. Bd. of Revision* (1974), 38 Ohio St.2d 233, 67 O.O.2d 296, 313 N.E.2d 14, in which this court ruled that filing a completed BTA Form 1 was required for the board of revision to consider an application for a decrease in the valuation of real property.

{¶ 26} Generally, under *Akron Std. Div. v. Lindley* (1984), 11 Ohio St.3d 10, 11 OBR 9, 462 N.E.2d 419, the court applies "a substantial compliance test to determine whether to dismiss an appeal for failure to comply with an appellate procedure statute. If the omitted requirement runs to the core of procedural efficiency, then the requirement is essential, the omission is not substantial compliance with the statute, and the appeal is to be dismissed." *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 143-144, 572 N.E.2d 56, 57.

{¶ 27} Recently, in *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision* (1998), 80 Ohio St.3d 591, 594, 687 N.E.2d 723, 725, this court observed that the property record card contains much of the information that the form in *Stanjim* requested. "Today, if the auditor complies with the property record card requirements, most of the relevant data requested by the Pertinent Facts section of the *Stanjim* form is now recorded on the property record card in his or her possession." Furthermore, the *Cleveland Elec. Illum.* court declined to require that a complainant prove his case in the complaint:

"To comply with the core of procedural efficiency does not require that a complainant prove his case within the complaint. * * * The statute [R.C.

5715.19(G)] does not require that all that evidence be contained within the complaint itself." *Id.* at 597, 687 N.E.2d at 727.

{¶ 28} In this case, R.C. 5715.27(A) permits the owner of the property seeking exemption to "file an application with the tax commissioner * * * requesting that such property be exempted from taxation and that unpaid taxes and penalties be remitted as provided in division (B) of section 5713.08 of the Revised Code." The statute requires nothing further as to information to be contained in the application. R.C. 5715.30 requires the commissioner to prescribe and furnish blank forms, including exemption application forms.

{¶ 29} Under this authority, a property owner need only request exemption for his property. Of course, the owner will want to identify it. In this case, the applicants included a copy of the property record card, which provided complete information about the property. The commissioner received additional information through correspondence and a hearing. The statutes do not require the provision of comprehensive information on the application. The commissioner readily investigated the application and evidently received sufficient information to grant exemptions. The information that Princeton argues should have been provided does not run to the core of procedural efficiency in granting these exemptions, and the Tax Commissioner did not err in exercising his jurisdiction regarding the complaints.

### Remitting Taxes before Receiving Request

{¶ 30} Princeton argues in Proposition of Law No. IX that the commissioner improperly approved remitting the taxes for the Levy property before he received the request to remit them. Levy applied for exemption in 1996 but did not set forth on the form that he sought remission of prior years' taxes. On July 8, 1997, Union Township forwarded to the Tax Commissioner Levy's May 21 1997 request to remit prior years' taxes. The commissioner granted the three-year remission with the exemption on June 24, 1997.

**{¶ 31}** R.C. 5715.27(A) permits the owner of a property to file an application with the commissioner requesting that the owner's "property be exempted from taxation and that unpaid taxes and penalties be remitted" under R.C. 5713.08(B), which authorizes the commissioner to remit "[a]ny taxes, interest, and penalties which have become a lien after the property was first used for the exempt purpose * * * except as is provided in section 5713.081 of the Revised Code." R.C. 5713.081 limits the commissioner's power to remit taxes to three years:

"No application for real property tax exemption and tax remission shall be filed with, or considered by, the tax commissioner in which tax remission is requested for more than three tax years, and the commissioner shall not remit more than three years' delinquent taxes, penalties, and interest."

**{¶ 32}** Generally, the commissioner receives the application for exemption and remission before the commissioner grants it. Nevertheless, these cited statutes do not prevent the commissioner from granting a remission before the commissioner receives the request. The commissioner may not consider an application in which remission is requested for more than three years, and the commissioner may not remit more than three years' taxes. The commissioner, however, has power to grant remissions without receiving a timely request. Thus, the commissioner could grant the remission in this case before receiving a request to do so.

### Commissioner's Review of the Public Benefit

**{¶ 33}** In Proposition of Law No. X, Princeton asserts that the commissioner has authority to determine under R.C. 5709.73 whether Union Township trustees properly declared as a public purpose certain improvements that they viewed as necessary for the development of various parcels.

**{¶ 34}** We have historically deferred to the General Assembly in subjecting property to taxation and exempting it therefrom. Here, as the BTA found, R.C. 5709.73 sets forth the criteria for the TIF exemption. The statute empowers a

township to pass a resolution declaring that public improvements necessary for the development of certain parcels of land are a public purpose, thus initiating the exemption. The statute does not provide for any review by the commissioner on whether the declaration of the township is correct. Consequently, contrary to Princeton's contention, the commissioner could not review the township's decision in passing the resolution; he could only record that the township had passed the resolution and determine that the resolution applied to the years under review.

### Uniformity Clause

{¶ 35} In Proposition of Law No. XI, Princeton contends that Union Township chose only certain parcels in the TIF district for tax exemption. This, Princeton contends, violates the Uniformity Clause, Section 26, Article II, Ohio Constitution ("All laws, of a general nature, shall have a uniform operation throughout the state"), because the township is not applying R.C. 5709.73 uniformly throughout the TIF area. In a footnote, Princeton claims that it does not contend that R.C. 5709.73 *et seq.* is unconstitutional; rather, Princeton contends that the township has applied the statute in an unconstitutional manner.

{¶ 36} In *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 667 N.E.2d 1174, this court reviewed the Uniformity Clause, stating that the clause ensures "that general laws 'cannot operate upon the named subject matter in *one part of the state* differently from what it operates upon it in other parts of the state. That is, the law must operate uniformly on the named subject matter in every part of the state, and when it does that it complies with this section of the Constitution.' " (Emphasis *sic*.) *Id.* at 356, 667 N.E.2d at 1177, quoting *State v. Nelson* (1894), 52 Ohio St. 88, 98, 39 N.E. 22, 23.

{¶ 37} *Austintown*, 76 Ohio St.3d at 358, 667 N.E.2d at 1178, furthermore quoted language from *Cincinnati Street Ry. Co. v. Horstman* (1905), 72 Ohio St. 93, 109, 73 N.E. 1075, 1078, that undermines Princeton's argument. In *Cincinnati Street Ry. Co.*, this court stated, "If the law was imperfect in its operation, or if the

classification should be broadened, the remedy * * * should be sought through the general assembly."

{¶ 38} Because Princeton's claim under this proposition of law does not challenge the statutes based on different operations in different parts of the state, Princeton does not demonstrate a violation of the Uniformity Clause.

### Stated Object of the Tax

{¶ 39} Finally, Princeton argues in Proposition of Law No. XII that the TIF scheme adopted by Union Township deprives Princeton of tax revenues that it should receive, thereby violating Section 5, Article XII, Ohio Constitution, which provides:

"No tax shall be levied, except in pursuance of law; and every law imposing a tax shall state, distinctly, the object of the same, to which only, it shall be applied."

{¶ 40} The General Assembly, in enacting R.C. 5709.73 *et seq.*, put in place procedures for establishing TIFs that authorize the actions taken by Union Township that Princeton challenges. The General Assembly determined that it was desirable to allow TIFs to operate in this manner. The statutes' effects on Princeton are a natural consequence of the General Assembly's decision to authorize Union Township's actions. We decline to second-guess, under Section 5, Article XII, Ohio Constitution, the wisdom of the General Assembly in this regard. See *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323, 328 (this court will declare a statute unconstitutional only when the legislation and constitutional provision are clearly incompatible); *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. See, also, *Austintown Twp. Bd. of Trustees*, 76 Ohio St.3d at 356, 667 N.E.2d at 1176-1177 ("it is not the function of a reviewing court to assess the wisdom or policy of a statute but, rather, * * * to determine whether the General Assembly acted within its legislative power").

14

{¶ 41} Accordingly, for all the foregoing reasons, we affirm the decisions of the BTA, finding them to be reasonable and lawful.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————

*Schroeder, Maundrell, Barbiere & Powers* and *John W. Hust*, for appellant.

*Betty D. Montgomery*, Attorney General, *Phyllis J. Shambaugh* and *James W. Sauer*, Assistant Attorneys General, for appellee Tax Commissioner.

*Frost Brown Todd LLC, Samuel M. Scoggins, Thomas D. Amrine* and *Matthew C. Blickensderfer*, for appellee Duke Realty Limited Partnership.

*Frost Brown Todd LLC, Samuel M. Scoggins, Thomas D. Amrine* and *Matthew C. Blickensderfer*, urging affirmance for *amicus curiae,* West Chester Township.

————————————