**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision,* **Slip Opinion No. 2014-Ohio-4353.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4353

KOHL'S ILLINOIS, INC., APPELLANT, *v.* MARION COUNTY BOARD OF

REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets,**

**it may be cited as *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision,***

**Slip Opinion No. 2014-Ohio-4353.]**

*Real property taxation—Tax-increment financing—Covenant not to contest*

*valuation—dismissal of valuation complaint reversed.*

(No. 2013-1006—Submitted June 10, 2014—Decided October 8, 2014.)

APPEAL from the Board of Tax Appeals, No. 2011-A-2747.

_____

**Per Curiam.**

{¶ 1} In this appeal, we review the holding of the Marion County Board of Revision ("BOR") and the Board of Tax Appeals ("BTA") that the complaint filed by the property owner (Kohl's Illinois, Inc. or Kohl's Department Stores, Inc., referred to as "Kohl's") was "void" because the property at issue was subject to a tax-increment-financing ("TIF") agreement that contained a covenant prohibiting the filing of a complaint. We conclude that any bar to the complaint

that arises from the TIF agreement is not a jurisdictional restriction and that, as a result, the beneficiaries of the covenant had the burden to come forward and prove their entitlement to a dismissal of the complaint. Those persons are the county commissioners, a party to the TIF agreement, and River Valley Local Schools Board of Education ("BOE"), which received a financial accommodation through the TIF agreement.

{¶ 2} Because the beneficiaries did not step forward and shoulder the burden to prove their entitlement to a dismissal of Kohl's complaint, we vacate the BTA's decision and remand for further proceedings at the BTA.

**FACTUAL BACKGROUND**

*1. The TIF Agreement*

{¶ 3} TIF is a method of promoting and financing the development of real property by directing " 'all or a portion of the increased property tax revenue that may result' " from the development to defraying the cost of improvements that are part of the development. *Princeton City School Dist. Bd. of Edn. v. Zaino*, 94 Ohio St.3d 66, 68, 760 N.E.2d 375 (2002), quoting Meck & Pearlman, *Ohio Planning and Zoning Law* 704, Section T 15.29 (2000); *see also Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 6 ("One such law for spurring economic growth is TIF, by which improvements made to real property are exempted from taxation, and the funds that would have been applied toward taxes are instead applied toward public improvements that benefit the property within the area subject to the TIF").

{¶ 4} R.C. 5709.77 through 5709.81 authorize counties to enter into TIF arrangements to finance improvements to real property. Pursuant to those statutes, the Marion County commissioners adopted the TIF resolution in this case on December 20, 2005.[1] In accordance with the statutes, that resolution (1)

---

[1] The evidence concerning the TIF agreement was presented by Kohl's at the BTA, and is not otherwise in the record.

declares "improvements" to specified parcels to be a public purpose, (2) specifies public infrastructure improvements to be made that benefit those parcels, (3) authorizes 100 percent tax exemption of the increased property value and requires the owners of the parcels to make "service payments" in lieu of those taxes (instead of adding to the public fisc, the payments go into a TIF fund [the "redevelopment tax increment equivalent fund"] that finances the improvements), and (4) approves a TIF agreement along with a compensation agreement with the BOE.

{¶ 5} The resolution outlines the plan for exempting increased value and substituting service payments into the TIF fund for tax payments. The TIF agreement is contemplated by the resolution to be in force for 30 years, starting at the earlier of the first tax year in which increased value is reflected on the tax list, or tax year 2010.

{¶ 6} The method for recapturing the "tax increment," i.e., the taxes attributable to the increased value of the property, is to require the property owners to pay "service payments" into a TIF fund in lieu of paying property taxes into the usual public-revenue funds. The TIF fund then finances the public improvements while making the board of education whole. This redirection of revenue involves only that amount that would be payable as tax with respect to the increased value—and the increased value is referred to as the Improvement, with a capital "I."

{¶ 7} The parties to the TIF agreement were the county commissioners, the developer Max A. Findlay, Inc., and other then-current property owners. Kohl's also presented a deed showing transfer of the property at issue from the developer to Kohl's on February 27, 2006. The TIF agreement was executed December 21, 2005, one day after the county commissioners passed the TIF resolution.

### 2. The no-contest covenant

{¶ 8} At the heart of this appeal lies the provision in Section 3.1 of the TIF agreement that "no Owner shall contest the assessed valuations of any Improvement for real property tax purposes." Section 3.2, referring to taxes other than the real property tax, does expressly permit tax contests with respect to those other taxes.

{¶ 9} The TIF agreement expressly calls for owner covenants to run with the land, Section 3.4, and to effectuate that provision the Declaration of Covenants was filed in the public records of the chain of title of the properties subject to the TIF. The no-contest covenant was thereby expressly intended to run with the land and bind those, such as Kohl's, who purchased from the original owners who signed the TIF agreement.

{¶ 10} Also potentially pertinent is Section 7.3, "Binding Effect," which states:

> This Agreement shall inure to the benefit of and shall be binding upon the County, all Owners and the Developer, and their respective successors and assigns, provided, however, only the covenants running with the land described in Section 3.4 shall be binding on Owners subsequent to the Current Owners unless that subsequent Owner is the Developer, the successor of a Current Owner of the Developer, or an assignee of this Agreement.

{¶ 11} This provision purports to bind a successor owner to the entire TIF agreement, based not on the covenant running with the land, but on Kohl's status as immediate successor to the developer, which itself was a signatory to the TIF agreement.

4

{¶ 12} Previously mentioned, the "Declaration of Covenants" deserves further discussion. It contained a précis of the TIF resolution and agreement. Filed in the county recorder's office in the chain of title of the TIF properties, the declaration put purchasers on notice of their provisions—in particular, those intended to run with the land, such as the no-contest covenant at issue in this case.

{¶ 13} Section 4(c) of the declaration reiterates the no-contest covenant, and Section 5, headed "Covenants to Run With the Land," expresses in no uncertain terms the mutual intent and agreement of the parties to the TIF agreement that the specified covenants should run with the land and that they should "be binding to the fullest extent permitted by law and equity, for the benefit and in favor of, and enforceable by, the County and the School District against the Property, the Improvements and the Owners." Also declared is the intent that the covenants "shall remain in effect for the full period of exemption provided in accordance with the requirements of the Act [previously defined as R.C. 5709.77 through 5709.81], the Resolution enacted pursuant thereto and the Agreement [i.e., 30 years]." Finally, the covenants are to be enforceable by "the County and the School District" against the "Owner's successors and assigns" even if the covenant is not set forth in the deeds to those later grantees.

{¶ 14} The declaration also elaborates as follows:

[T]he County and the School District, and their respective successors and assigns shall each be deemed a beneficiary of the covenants provided herein. Such covenants shall run in favor of the County and the School District * * * *without regard to whether either the County or the School District, has at any time been, remains or is an owner of any land or interest therein to, or in favor of, which such covenants relate.*

(Emphasis added.) In other words, the county commissioners and the BOE are declared to be entitled to enforce the covenant without regard to the usual real-covenant requirement that a restriction be appurtenant to land held by those entities.

### COURSE OF PROCEEDINGS

{¶ 15} On March 25, 2011, Kohl's Illinois, Inc. filed a valuation complaint that challenged the tax year 2010 valuation of a Kohl's store in Marion County. The complaint sought a true-value reduction of about $1,590,000, and the BOE filed a countercomplaint seeking to retain the auditor's higher valuation. As grounds for doing so, the BOE's complaint asserted: "Owner prohibited from contesting value by TIF agreement."

{¶ 16} By order dated August 24, 2011, the BOR "dismissed this case due to the fact that this parcel of property is part of the Legacy Crossing TIF with Marion County," and "[a]s part of the TIF agreement complaints against the value are void until witch [sic] time the TIF agreement has been met." Kohl's appealed to the BTA.

{¶ 17} At the BTA, Kohl's waived hearing and filed a brief. No other party appeared.

{¶ 18} As exhibits to its brief, Kohl's submitted (1) its complaint, (2) the BOR's dismissal order, (3) the TIF resolution passed by the Marion County commissioners, (4) the TIF agreement entered into between the county commissioners and the original developer/owners, (5) the declaration of covenants from the TIF agreement that was recorded in the chain of title, and (6) the deed by which Kohl's acquired the property from the owners that, along with the developer, had entered into the TIF agreement with the county commissioners.

{¶ 19} In its brief, Kohl's advanced the following arguments: (1) the TIF agreement and declaration of covenants prohibited a tax-valuation challenge "for the *first year* that the increase in the assessed value of real property appeared on

the tax list, which was the tax year 2007" (emphasis sic), along with variations on that contract-construction theme, (2) the TIF agreement contains conflicting provisions regarding permissibility of tax-valuation challenges, one in Section 3.1 and one in Section 3.2, thereby creating an ambiguity that should be construed in Kohl's favor, (3) the no-contest covenant, if otherwise enforceable, should be declared void as against public policy, and (4) if the no-contest covenant is otherwise enforceable, its prohibition violates due-process and property-tax uniformity.

{¶ 20} In its decision, the BTA rejected Kohl's primary argument that the no-contest covenant applied only to 2007, holding that the statutory definition of "Improvement" was "included to identify the real property that would be subject to the TIF agreement and does not speak to any limitation on restrictions on filing real property tax complaints." BTA No. 2011-A-2747, 2013 WL 2395803, *3 (May 24, 2013). With respect to the allegation of conflict between Sections 3.1 and 3.2, the BTA found that "the provisions that clearly specify prohibitions against real property tax valuation contests should control over the more general provision relating to 'all taxes.' " *Id.* In a footnote, the BTA declined to address Kohl's constitutional arguments based on its lack of authority to do so under case law. *Id.*, fn. 2. Kohl's public-policy argument was left unaddressed. The BTA then affirmed the decision of the BOR to dismiss the complaint.

{¶ 21} Kohl's has appealed. As appellant, Kohl's is the only party to have filed a brief before this court.

### THE NO-CONTEST COVENANT HAS NOT BEEN SHOWN
### TO RAISE A JURISDICTIONAL BAR

{¶ 22} Kohl's fourth proposition of law points to a fundamental flaw in the decisions below. Although R.C. 5715.19 authorized a property owner like Kohl's to file a valuation complaint, the BOR found that the complaint was "void" on account of the TIF agreement, and the BTA affirmed. Yet no statute

was cited, either in R.C. Chapter 5715 or in the TIF legislation, that contravenes the grant of the right to file a complaint on the grounds of a contractual covenant in a TIF agreement. To be sure, the TIF statutes directly mandate that a TIF resolution require owners to pay service payments, but they do not appear to authorize any impairment of the right to file a complaint.

{¶ 23} The BOR is a creature of statute whose powers are defined by and dependent upon the pertinent sections of the Revised Code. *See Kalmbach Wagner Swine Research Farm v. Wyandot Cty. Bd. of Revision*, 81 Ohio St.3d 319, 322, 691 N.E.2d 270 (1998). It follows that the BOR's jurisdiction is controlled by statute, and a complaint that the statutes authorize an owner to file is not void by virtue of a covenant nowhere prescribed or specifically endorsed by statute.

{¶ 24} In *Kalmbach Wagner*, the board of revision had dismissed the complaint on the grounds that the owner/complainant had declined the board's request to produce income and expense statements for the swine-breeding operation conducted on its real property. The BTA reversed and remanded, and on appeal we affirmed.

{¶ 25} In doing so, we noted that the enabling statutes for the boards of revision, R.C. 5715.10 and 5715.11, authorize the hearing of complaints and the ordering of an increase or decrease in value, but do not generally authorize dismissals. The court noted that it had affirmed only those dismissals by the boards of revision that were based on noncompliance with statutory requirements and that no statute required production of the documents that the board had requested. Accordingly, the board of revision's statutory duty had been to determine value in light of the evidence before it, and the court affirmed the BTA's reversal of the dismissal.

{¶ 26} Our decision in *Kalmbach Wagner* raises two points pertinent to the present case. First, the case acknowledges that a board of revision *is* justified

in dismissing a complaint when a violation of statutory requirements deprives the board of jurisdiction. *See, e.g., Gammarino v. Hamilton Cty. Bd. of Revision*, 71 Ohio St.3d 388, 643 N.E.2d 1143 (1994) (dismissal of second-filed complaint within the triennium, filed in violation of R.C. 5715.19(A)(2)). But jurisdictional limitations typically relate to the violation of statutory requirements, such as the March 31 deadline for filing complaints or the prohibition of a second filing within the triennium. Unless the defect involves violation of a statute, it is typically not jurisdictional. *See Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 137 Ohio St.3d 266, 2013-Ohio-4627, 998 N.E.2d 1132, ¶ 23.

{¶ 27} Here, the BOR statutes make no mention of TIF restrictions, and the TIF statutes do not acknowledge prohibitions against challenging valuation. It follows that even if the no-contest covenant is valid and binding on Kohl's, the source of its legal force is not statutory, and accordingly, it does not impose a jurisdictional limitation on the BOR. Therefore, the complaint was not "void" as found by the BOR and affirmed by the BTA.

{¶ 28} Second, *Kalmbach Wagner* recognizes that the grounds for a BOR to dismiss are, apart from jurisdictional defects, very limited. The court recognized that failure to prosecute can be a ground for dismissal. *Kalmbach Wagner*, 81 Ohio St.3d at 322, 691 N.E.2d 270, citing *LCL Income Properties v. Rhodes*, 71 Ohio St.3d 652, 646 N.E.2d 1108 (1995). But dismissing for failure to produce requested documents in *Kalmbach Wagner* itself was not a valid ground for dismissal. *See also Snavely v. Erie Cty. Bd. of Revision*, 78 Ohio St.3d 500, 678 N.E.2d 1373 (1997) (affirming a BTA decision that reversed an unexplained dismissal by the board of revision).

**THE BURDEN LAY ON THE BENEFICIARIES OF THE COVENANT**

**TO ASSERT IT AS A DEFENSE AGAINST KOHL'S COMPLAINT**

{¶ 29} If the no-contest covenant is valid and binding under contract law or real-covenant law, it may constitute grounds for dismissal. But the beneficiaries of the covenant—the county commissioners and the BOE—had the obligation to come forward and shoulder the burden of advancing the covenant as a defense against the complaint. Kohl's was the appellant at the BTA, and neither the statutes nor the case law places on Kohl's the burden of establishing that the covenant did not bar its complaint.

{¶ 30} Indeed, the declaration of covenants makes clear that the county commissioners and the BOE are the beneficiaries of the covenant and should bear the burden of proving that it was enforceable against Kohl's. The allocation of burden here is analogous to the situation in which one party relies on a settlement agreement and seeks to enforce it against the other parties: the proponent of the contract has the burden to show that it is entitled to relief based on the contract.

{¶ 31} It is notable that the county commissioners and the BOE both have standing to participate in BOR proceedings. R.C. 5715.19(A)(1) (county commissioners and boards of education are among those entities that may file valuation complaints) and 5717.01 (entities that may file valuation complaints may appeal to the BTA). The failure of either to appear at the BTA and defend the BOR's application of the no-contest covenant might be construed as a waiver of the opportunity to do so, but under these circumstances, Kohl's itself cannot claim the waiver, because it failed to assert the need for the proponents of the no-contest covenant to appear. Kohl's thereby waived any reliance on the claim that its opponents had waived their opportunity to be heard.

{¶ 32} Moreover, unlike the straightforward waiver of an affirmative defense in a civil case, the very premise of the BTA's review lay in the BOR's act of applying the no-contest covenant, with the result that the BTA necessarily had

to decide the issue of the covenant's validity. Accordingly, the proper course of action here is to remand to the BTA with the instruction that the county commissioners and the BOE be afforded the opportunity to argue in support of the covenant.

### KOHL'S ASSERTED GROUND FOR DISREGARDING THE
### NO-CONTEST COVENANT LACKS MERIT

**{¶ 33}** In plain and unambiguous terms, the TIF agreement at Section 3.1 states that "no owner shall contest the assessed valuations of any Improvement for real property for tax purposes," expresses the intent that the covenant run with the land against a successor such as Kohl's, and asserts that the covenant is enforceable by the county and the board of education. We conclude that Kohl's attempt to find an ambiguity in these terms fails.

**{¶ 34}** According to Kohl's, ambiguity arises by virtue of Section 3.2, which states as follows:

> Any Owner may in good faith contest any such tax, assessment or governmental charge, and in such event may permit such tax, assessment or governmental charge to remain unsatisfied during the period of such contest and any appeal therefrom unless in the reasonable opinion of counsel satisfactory to the Board, by such action any right or interest of the Board with respect to the Property, shall be materially endangered, or the Property, or any material part thereof, shall become subject to imminent loss of forfeiture, in which event such tax or governmental charge shall be paid prior to any such loss or forfeiture.

Kohl's contends that this provision contradicts the categorical requirement that there be no contest of "the assessed valuation of any Improvement for real

11

property tax purposes." But this argument is devoid of merit, and the BTA correctly rejected it.

{¶ 35} The no-contest covenant in Section 3.1 by its plain terms addresses only valuation for property-tax purposes to the extent that it determines the amount of service payments by setting the value of the Improvement. By stark contrast, Section 3.2 addresses other taxes and charges that might become a lien on the property—it is those *other* taxes and charges that may be contested.

### KOHL'S CONSTITUTIONAL CLAIMS ARE PREMATURE

{¶ 36} Kohl's second and third propositions of law raise constitutional arguments as a backstop to the contractual and statutory arguments set forth in propositions one and four. If the no-contest covenant were enforced, says Kohl's, that would deprive Kohl's of its due-process right to challenge the property-value basis for determining the service payments that it must pay. Moreover, Kohl's asserts that permitting the auditor to determine value without the possibility of challenge would violate the requirement of Article XII, Section 2 of the Ohio Constitution that property be "taxed by uniform rule according to value."

{¶ 37} These contentions are premature. "Constitutional questions will not be decided until the necessity for a decision arises on the record before the court." *State ex rel. Herbert v. Ferguson*, 142 Ohio St. 496, 52 N.E.2d 980 (1944), paragraph two of the syllabus. Quite simply, the enforceability of the no-contest covenant depends on factors not raised and considered at the BTA. First, the proponents of applying the covenant did not appear and demonstrate any statutory basis for applying the covenant to Kohl's. Second, no argument has been advanced that the no-contest covenant qualifies as a covenant that runs with the land under the pertinent case law. Only if the covenant were shown to apply to Kohl's under the relevant law would the constitutional questions become ripe for our consideration.

CONCLUSION

{¶ 38} For the foregoing reasons, we hold that the no-contest covenant has not been shown to impose a jurisdictional bar. As a result, the beneficiaries of the covenant—the county commissioners and the BOE—had the obligation to come forward and shoulder the burden of advancing the covenant as a defense against the complaint. They have not done so.

{¶ 39} We therefore vacate the decision of the BTA and remand to the BTA to conduct further proceedings consistent with this opinion

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, and Stephen M. Nowak, for appellant.

_____