**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Fairfield Twp. Bd. of Trustees v. Testa,* **Slip Opinion No. 2018-Ohio-2381.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-2381

FAIRFIELD TOWNSHIP BOARD OF TRUSTEES, APPELLANT, *v*. TESTA, TAX COMMR., ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Fairfield Twp. Bd. of Trustees v. Testa,* Slip Opinion No. 2018-Ohio-2381.]**

*Taxation—Exemption—R.C. 5709.07(A)(2)—House of public worship—Tax-increment-financing agreement—Priority of exemptions under R.C. 5709.911—When tax-increment-financing agreement was approved prior to the effective date of R.C. 5709.911, but a township did not preserve its right to service payments under the agreement, the house-of-public-worship exemption has priority.*

(No. 2016-0995—Submitted April 10, 2018—Decided June 21, 2018.)

APPEAL from the Board of Tax Appeals, No. 2015-633.

_____

**Per Curiam.**

{¶ 1} In this appeal, appellee tax commissioner defends the property owner's entitlement to its exemption from taxation as a house of public worship pursuant to R.C. 5709.07(A)(2). Appellant, Fairfield Township Board of Trustees, filed a complaint against the continued exemption pursuant to R.C. 5715.27(E). The township claims that by granting and continuing the public-worship exemption, the tax commissioner unlawfully relieved the church of its payment obligations as the owner of property subject to a recorded covenant. The covenant relates to a tax increment financing ("TIF") agreement entered into between the township and a previous owner of the church property.

{¶ 2} The tax commissioner found that R.C. 5709.911 subordinated the property's original TIF exemption to the public-worship exemption, and therefore rejected the township's argument. The Board of Tax Appeals ("BTA") affirmed.

{¶ 3} The township has appealed.

### I. Factual Background

*A. The TIF Agreement*

{¶ 4} Tax-increment financing "is a method of promoting and financing the development of real property by directing ' "all or a portion of the increased property tax revenue that may result" ' from the development toward defraying the cost of improvements that are part of the development." *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision*, 140 Ohio St.3d 522, 2014-Ohio-4353, 20 N.E.3d 711, ¶ 3, quoting *Princeton City School Dist. Bd. of Edn. v. Zaino*, 94 Ohio St.3d 66, 68, 760 N.E.2d 375 (2002), quoting Meck & Pearlman, *Ohio Planning and Zoning Law*, Section T 15.29, at 704 (2000). In this case, the "development" involved "public infrastructure improvements" that included road and bridge construction, signalization of an intersection, and the extension of public utilities. *See* R.C. 5709.73; R.C. 5709.40(A)(7); R.C. 5709.73(B).

**{¶ 5}** Once a TIF agreement is in place, any increase in the assessed value of the designated parcels is subject, in whole or in part, to (1) an exemption from taxation and (2) a concomitant obligation of the property owner to make payments "in lieu of tax" into special fund used to pay for the development—such payments are referred to as "service payments." R.C. 5709.73(B), (D); R.C. 5709.74. In this case, Fairfield Township obtained the agreement of the Fairfield City School District and the Butler County Joint Vocational School District to exempt 100 percent of the increased assessed value and extend the TIF agreement over a 20-year period in consideration of an agreement to compensate those districts with a portion of the payments to be made in lieu of taxes.

**{¶ 6}** In addition to the township's TIF resolution and the TIF Compensation Agreement between the township and the school districts, the record contains the "Developer's Service Agreement," to which there were several parties: (1) the township, (2) the county, (3) the developer, DPR Properties, Inc., and (4) a lending bank. The agreement sets forth the parties' obligations relating to the township's TIF zone. Among other things, DPR consented to the TIF and agreed to apply for exemption of the designated property from real-estate taxes. DPR committed itself and its assigns to making service payments in lieu of taxes into the township's "tax increment equivalent fund."

**{¶ 7}** The term of the TIF agreement is 20 years, unless the bonds and obligations are paid off earlier. Thus, the obligation to make service payments extends from 1998 through 2018. The agreement states that it must be recorded and referenced in any deed transferring property owned by DPR. It also provides that the service-payment obligations "shall be covenants running with the land and shall be enforceable by Township and County, against DPR and all successors and assigns of DPR."

*B. The Parcel at Issue*

**{¶ 8}** The parties stipulated at the BTA that DPR had conveyed the parcel at issue to W.M.M. Partnership on September 14, 1999. The property was then used as an insurance office. On December 13, 2011, W.M.M. conveyed the then-vacant property to Tri-City Church of God.

*C. Course of Proceedings*

**{¶ 9}** On September 3, 2013, the church filed an application to exempt the property as a house of public worship. The tax commissioner granted the exemption on December 9, 2013, finding that under R.C. 5709.911, the public-worship exemption was superior to the previously approved TIF exemption. The township's efforts to intervene in the church's exemption case were rebuffed for lack of standing.

**{¶ 10}** On December 11, 2014, the township filed a complaint against the continued exemption of the real property as a house of public worship. The tax commissioner's final determination denied the complaint and retained the exempt status of the property on April 13, 2015. The denial of the township's complaint was based on the same rationale as the commissioner's grant of exemption to the church: the commissioner again found that the TIF exemption was subordinated to the public-worship exemption by R.C. 5709.911.

**{¶ 11}** The township appealed to the BTA. Relying on the record created below it and the parties' stipulations, the BTA affirmed the tax commissioner's determination. BTA No. 2015-633, 2016 Ohio Tax LEXIS 1269 (June 10, 2016).

**II. Analysis**

*A. How the Exemption Statutes Apply to this Case*

**{¶ 12}** As discussed, under R.C. 5709.73, the township passed a resolution that created tax-exempt status for the increase in assessed value of the properties designated by the TIF agreement, and pursuant to the service agreement, the developer DPR was obligated to file an application to "effect and maintain" that

exemption during the period of the TIF agreement. Before 2004, it was unclear whether a later owner of a parcel could obtain a different exemption based on its own use of the property and thereby supersede the TIF exemption, thus relieving the later owner of the obligation to make service payments.

{¶ 13} In 2004, the legislature addressed this issue by enacting R.C. 5709.911, which established a priority of exemptions. Broadly speaking, for any TIF exemption approved *after* the effective date of R.C. 5709.911, the priority of exemptions depends upon whether the property owner either filed the application for the TIF exemption or consented to that exemption in writing if the political subdivision had filed the application. In either of those circumstances, the TIF exemption controls over a later claim of another exemption. R.C. 5709.911(B). On the other hand, if the political subdivision applied for the TIF exemption without the owner's written consent, the TIF exemption is subordinate to another exemption of the property. R.C. 5709.911(A).

{¶ 14} For TIF exemptions, such as the one at issue here, that were approved *before* the effective date of R.C. 5709.911, Sub.H.B. No. 427 ("H.B. 427"), Section 10(B), 150 Ohio Laws, Part III, at 4122-4123, an uncodified provision of the act, is dispositive. That section states that *all* TIF exemptions approved prior to the effective date of that act "shall be considered to have been granted subject to the limitations set forth in division (A) of section 5709.911 of the Revised Code, as enacted by this act."

{¶ 15} Those limitations are twofold. First, "[a]n exemption granted under [R.C. 5709.73] shall be subordinate to an exemption with respect to the property or portion of the property granted under any other provision of the Revised Code." R.C. 5709.911(A)(2)(a). Second, service payments in lieu of taxes under R.C. 5709.74 are not required with respect to the property that is exempt from real property taxes under another provision of the Revised Code during the effective period of the exemption. R.C. 5709.911(A)(2)(b).

{¶ 16} H.B. 427, Section 10(B), mitigates the harshness of that rule by specifying steps that a township can take to preserve its right to service payments. An application for a TIF exemption could have been refiled within 90 days of the effective date of H.B. 427 and was subject to only ministerial approval by the tax commissioner. If an owner had filed the application for the exemption, and the exemption was approved before H.B. 427 became effective, the township could have filed a notice under R.C. 5709.911(C) to preserve the right to service payments. Additionally, the third and fourth sentences of Section 10(B) prescribe a process that, in a proper case, permits a township to preserve its rights by re-recording its TIF agreement.

{¶ 17} According to the parties' stipulations, the township "did not file an application for exemption with the Tax Commissioner with respect to the property within the TIF district, including the Subject Property, after the effective date of Sub.H.B. 427." Additionally, the township "did not make any filing with respect to the TIF district with the Butler County Recorder's Office after the effective date of Sub.H.B. 427." The township does not contest the tax commissioner's argument that by failing to perform one or the other of these acts, the township failed to exercise its option under H.B. 427 to preserve the priority of the TIF exemption over the public-worship exemption.

*B. The Statutes Control over the Real Covenant*

{¶ 18} The gravamen of the township's appeal is that the law of contracts and real covenants provides that the service payments are covenants running with the land that can be enforced against the church. In the township's view, the continued enforceability of the real covenants means that the church cannot claim a house-of-public-worship exemption but is limited to the partial TIF exemption, which requires that service payments be made.

{¶ 19} We disagree. Under R.C. 5709.911, the church's house-of-public-worship exemption has priority, and thus no service payments are required. As a

general matter, townships are " 'creatures of the law and have only such authority as is conferred on them by law.' " *Drees Co. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, ¶ 13, quoting *State ex rel. Schramm v. Ayres*, 158 Ohio St. 30, 33, 106 N.E.2d 630 (1952). And as demonstrated in *Drees*, this legal limitation militates against permitting townships to enforce tax or in-lieu-of-tax obligations that the statutes themselves no longer authorize.

{¶ 20} Moreover, the law of real covenants by its own force makes Section 10(B) of H.B. 427 and R.C. 5709.911(A)(2)(b) controlling, with the result that the requirement to make service payments can no longer be enforced. A well-established prerequisite for enforcing a covenant that runs with the land is that the restrictions imposed cannot be against public policy. *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56, 166 N.E. 887 (1929), paragraph one of the syllabus. This doctrine derives from the more general contract principle that " 'the right of making contracts at pleasure is a personal privilege of great value,' " but that privilege " 'must be restrained when contracts are attempted against the public law, general policy, or public justice.' " *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, ¶ 15-17, quoting *Key v. Vattier*, 1 Ohio 132, 147 (1823). As a result, under the common law, the public-policy doctrine calls for the court to "examine whether the subject deed restriction accomplishes a result that the legislature has sought to prevent." *Orwell Natural Gas Co. v. Fredon Corp.*, 2015-Ohio-1212, 30 N.E.3d 977 (11th Dist.), ¶ 62. If so, the covenant becomes unenforceable.

{¶ 21} For example, in *Conners*, we invalidated a deed restriction that prevented property that had been sold by a school district from being used for educational purposes when the new owners sought to use the property as a community school because the restriction violated R.C. 3313.41. That statute called for public-school property, when offered for sale by a school district, to be made available to community schools.

**{¶ 22}** Applying this doctrine to the present appeal is straightforward: by dictating that TIF exemptions be subordinated to other exemptions, and by invalidating the requirement that service payments be made, R.C. 5709.911 bars the enforcement of the real covenant with respect to service payments.

*C. The* Kohl'*s Case is Inapposite*

**{¶ 23}** The township argues that our decision in *Kohl's*, 140 Ohio St.3d 522, 2014-Ohio-4353, 20 N.E.3d 711, establishes that real covenants in TIF agreements operate outside the TIF statutes and somehow supersede them. We disagree.

**{¶ 24}** In *Kohl's*, we addressed a complaint filed by a property owner. The property was subject to a TIF agreement that included a "no-contest" covenant, that is, a covenant that explicitly barred filing a challenge to the valuation on which the assessment of the service payments was based. The covenant had been recorded in the chain of title of the owner who had filed a valuation complaint. We vacated the BTA's decision holding that the owner's valuation complaint was void. We held that the covenant by itself did not eclipse the statutory right to file a complaint, with the result that the covenant was not a *jurisdictional* bar. *Id.* at ¶ 22. But we also held open the possibility that the covenant might constitute a valid defense against the valuation complaint if the beneficiaries of the covenant—the county commissioners and the school district—demonstrated that it was legally and factually proper to enforce it against the complainant. *Id*. at ¶ 29. Accordingly, we vacated the decision and remanded the matter to the BTA for further proceedings.

**{¶ 25}** The township relies on our statement in *Kohl's* that "if the no-contest covenant is valid and binding on Kohl's, the source of its legal force is not statutory, and accordingly, it does not impose a jurisdictional limitation on the BOR." *Id*. at ¶ 27. That phrase, the township argues, means that H.B. 427 does not affect the binding force of the covenant, which requires the property owner to make service payments.

{¶ 26} That argument is mistaken, because the passage in *Kohl's* not only addresses a jurisdictional issue that is simply not present here but also emphasizes that no statutory provision addressed the no-contest covenant. By stark contrast, R.C. 5709.911 directly addresses the issue of the priority of exemptions. In *Kohl's*, there was no conflict between a statute and the covenant because there was no statutory provision addressing the propriety of the covenant. But in this appeal, H.B. 427 conflicts with enforcement of the real covenant. *Kohl's* is therefore inapposite.

### D. The Township Lacks Standing to Raise its Constitutional Challenge

{¶ 27} The township also argues that if the statute supersedes the real covenant, and if the house-of-public-worship exemption supersedes the requirement to make service payments, the township's contractual rights have been unconstitutionally impaired. In essence, the township argues that R.C. 5709.911 cannot retroactively change TIF obligations entered into in 1998.

{¶ 28} This argument invokes Article II, Section 28, Ohio Constitution, which states: "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *." The township invokes the contract-impairment prohibition as an as-applied challenge to R.C. 5709.911, citing *Middletown v. Ferguson*, 25 Ohio St.3d 71, 495 N.E.2d 380 (1986) (setting aside the result of a legislative initiative in a bond-validation proceeding based on the impairment-of-contract claim advanced by the city). The township argues that the real covenant requiring service payments may not be impaired by the statute.

{¶ 29} We disagree. As discussed, the parties have stipulated that the township did not take action pursuant to H.B. 427 to preserve the priority of the TIF exemption and thereby retain its right to service payments. Because the township did not avail itself of the statutorily created opportunity to preserve its rights, it has been injured *by its own omissions* rather than by the operation of the statute itself.

**{¶ 30}** We have held that "[t]he constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 512 N.E.2d 971 (1987), syllabus. The township in this appeal was injured by its own failure to take the prescribed step to preserve its rights under the very law it challenges, and the township did not establish why it could not have done so. We conclude that the township lacks standing under *Palazzi* to advance an as-applied contract-impairment challenge.

**{¶ 31}** The tax commissioner argues more broadly that as a political subdivision, the township cannot claim any protection under the contract-impairment clause. With respect to this argument, the commissioner relies on *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 146 Ohio St.3d 356, 2016-Ohio-2806, 56 N.E.3d 950, ¶ 2, in which we held that "the Retroactivity Clause * * * does not protect political subdivisions * * * that are created by the state to carry out the state's governmental functions." The commissioner argues that by extension, no political subdivision may assert a contract-impairment claim.

**{¶ 32}** We decline to address this far-reaching argument because we have already found that the township lacks standing to assert the as-applied challenge.

### III. Conclusion

**{¶ 33}** For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and John W. Hust, for appellant.

Michael DeWine, Attorney General, and Christine T. Mesirow and Kody R. Teaford, Assistant Attorneys General, for appellee Tax Commissioner.

_____